1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

9

10  WHITNEY DUENEZ, individually
    and as successor-in-interest
11  for Decedent ERNESTO DUENEZ,
    JR.; D.D., a minor, by and
12  through his guardian ad
    litem, WHITNEY DUENEZ;
13  ROSEMARY DUENEZ, individually;
    and ERNESTO DUENEZ, SR.,
14  individually,                        NO. CIV. S-11-1820 LKK/KJN

15          Plaintiffs,

16      v.
                                              O R D E R
17  CITY OF MANTECA, a municipal
    corporation; DAVID BRICKER,
18  in his capacity as Chief of
    Police for the CITY OF
19  MANTECA; (FNU) AGUILAR,
    individually and in his
20  official capacity as a police
    officer for the CITY OF
21  MANTECA; and DOES 1-100,
    inclusive,
22
            Defendants.
23  _____/

24      This case arises from the shooting death of Ernesto Duenez,

25  Jr., and is brought pursuant to 42 U.S.C. § 1983.  Plaintiffs

26  allege that officers from the Manteca Police Department shot and

1

1  killed Ernesto Duenez, Jr., in violation of their rights under the
2  Fourth and Fourteenth Amendments to the United States Constitution.
3  Plaintiffs are the widow and successor-in-interest to the decedent,
4  the son, and the parents of Ernesto Duenez, Jr.  Defendants are the
5  City of Manteca; Chief David Bricker of the Manteca Police
6  Department; Officer Aguilar of the Manteca Police Department, being
7  sued individually and in his official capacity; and a number of
8  officers from the Manteca Police Department.

9      Before the court is Defendants' motion to dismiss, to strike,
10 and for a more definite statement, Defs' Mot. Dismiss, ECF No. 9
11 (Aug. 30, 2011), which Plaintiffs oppose, Pls' Opp'n, ECF No. 14
12 (Sept. 27, 2011).

13                    **I. FACTUAL BACKGROUND**[1]

14     On June 8, 2011, Ernesto Duenez, Jr. was driven by
15 acquaintances, Rudy Camarena and Rudy Camarena's wife, to the
16 Manteca home of Michael Henry, where Mr. Ernesto Duenez, Jr.
17 retrieved some of his property.  ECF No. 1, ¶ 12.  Mr. Henry
18 offered a small knife to Ernesto Duenez, Jr.  Id.  After Ernesto
19 Duenez, Jr. indicated that the knife was not his, Mr. Henry
20 offered the knife to Mr. Camarena, appearing insistent that Mr.
21 Camarena take the knife.  Id.  Mr. Camarena accepted the knife
22 and threw it backwards, where it either landed in the bed of the

23

24     [1] These facts are taken from the allegations in the
   Plaintiffs' Complaint, ECF No. 1 (July 11, 2011), unless otherwise
25 specified.  The allegations are taken as true for purposes of this
   motion only. See Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct.
26 2197 (2007).

1  pickup truck or on the ground.  Id.

2      That afternoon or evening, a Manteca Police Officer, Sgt.

3  Aguilar, was seen driving around the neighborhood of Mr.

4  Camarena's residence.  Id. at ¶ 13.  Local press accounts have

5  since portrayed Mr. Camarena's residence as a suspected drug

6  house, but an unlawful search of the Camarena residence found no

7  contraband or evidence that the Camarena residence was involved

8  in any illegal activity.  Id.  No one who lived at the Camarena

9  residence or who was inside the residence at the time of the

10 incident was on probation or parole.  Id.

11     Shortly before 6:45 p.m., as Mr. Camarena and his wife

12 returned to their home in Manteca with Ernesto Duenez seated in

13 the small backseat of their two-door pickup, Mr. Camarena saw a

14 Manteca Police Department patrol vehicle pass his truck, but the

15 patrol vehicle did not activate its siren or indicate for Mr.

16 Camarena to pull over.  Id. at ¶ 13.[2]  At this time, Plaintiff

17 Whitney Duenez, Ernesto Duenez's wife, was inside the Camarena

18 residence, along with other members of Mr. Camarena's family,

19 including Mr. Camarena's elderly mother and the Camarenas'

20 children.  Id.

21     After Mr. Camarena parked his pick-up truck in its usual

22 parking spot, in the yard of the Camarena residence, a Manteca

23 Police Department patrol vehicle stopped behind Mr. Camarena's

24

_____

25     [2] The "Statement of Facts" section of Plaintiff's complaint
   has two paragraphs numbered "13."  See Pls' Compl., ECF No. 1, at
26 4-5.  This fact is taken from the second of those paragraphs.

                                3

1   truck and activated its siren light.  Id. at ¶ 14.  The truck's

2   ignition was turned off, and Ernesto Duenez began to try and

3   exit the truck, while Mr. Camarena and his wife remained in the

4   truck.  Id.  Ernesto Duenez pushed Mr. Camarena's wife (who was

5   seated in the passenger seat) forward as he began to exit the

6   truck and stepped his left foot out of the truck, while his

7   right foot was tangled in the seat belt.  Id.  Mr. Duenez's

8   hands were up and it was clear that he possessed no visible

9   weapon.  Id.  Other Manteca patrol vehicles arrived at the scene

10  and at least one police officer, who Plaintiffs believe to be

11  Defendant Officer Aguilar, and possibly other unknown officers

12  (named as Defendant "Officer Does"), then fired several gunshots

13  at Ernesto Duenez and struck him in the torso several times.

14  Id.

15      Plaintiff Whitney Duenez, hearing gunshots and someone

16  yelling her husband's name, ran outside the Camarena residence

17  and saw her husband standing, with one foot outside the truck

18  and his right foot still inside the truck, having apparently

19  been shot several times in the torso.  Id. at ¶ 15.  Ernesto

20  Duenez had no weapon in his possession, was not advancing upon

21  anyone, and was essentially standing still after he had been

22  shot multiple times.  Id.  Whitney Duenez saw a Manteca Police

23  Department officer, identified by his name tag as Defendant

24  Officer Aguilar, fire one more gunshot, which Whitney Duenez saw

25  strike Ernesto Duenez in the face, whereupon Mr. Duenez fell to

26  the ground.  Id.  No weapons were visible anywhere near the

1  vicinity of Mr. Duenez, except those possessed by the Manteca

2  police officers present.   Id.

3      Whitney Duenez ran towards Ernesto Duenez, whose body lay

4  on the ground while his foot remained entangled in the seat belt

5  of Mr. Camarena's truck, and tried to hold Mr. Duenez's body as

6  he died.   Id. at ¶ 16.  Unidentified Manteca Police Department

7  officers ordered Whitney Duenez to put her hands up, at

8  gunpoint, spoke to her in a rude and derogatory manner, and

9  handcuffed her.   Id.

10     Ernesto Duenez's body was handcuffed by unidentified

11  Manteca Police Department officers.   Id. at ¶ 17.  No officer at

12  the scene provided first aid to Mr. Duenez.   Id.  No weapons

13  appeared to be recovered from Mr. Duenez's person or from the

14  scene.   Id.  One unidentified Manteca Police Department officer

15  cut the seat belt that Mr. Duenez's foot was tangled in and

16  pulled Mr. Duenez's body away from the truck.   Id.

17     Several unidentified officers from the Manteca Police

18  Department then detained Whitney Duenez, Rudy Camarena, and Mr.

19  Camarena's wife at gunpoint.   Id. at ¶ 18.  Without a search

20  warrant, several unidentified Manteca Police Department officers

21  (named as Defendants "Does") entered the Camarena residence,

22  searched it, and detained several people including Mr.

23  Camarena's son and Mr. Camarena's elderly mother, who is in poor

24  health.   Id.

25     All of the people arrested and/or detained at the scene,

26  including Whitney Duenez, Rudy Camarena, Mr. Camarena's wife,

1   and Mr. Camarena's son, were transported to the Manteca Police
2   Department, where they were detained and interrogated before
3   being released hours later, without any charges. Id. at ¶ 19.
4   Each of these people were held against their will until their
5   release. Id.

6      Ernesto Duenez, Jr. was on parole, and was set to discharge
7   from parole one month after he died. Id. at ¶ 20.  Mr. Duenez
8   believed that he may have tested positive on a drug test and
9   possibly had a warrant against him for violating parole due to
10  the drug test, which would have caused Mr. Duenez to serve
11  minimal time in custody. Id.  Mr. Duenez's parole status and
12  two-strike history was likely known to the Manteca Police
13  Department officers, including Defendant Aguilar, but the
14  defendants had no information on which they could reasonably
15  believe that Mr. Duenez was armed at the time he was shot, or
16  that he posed anything more than a risk of unarmed flight. Id.
17  Mr. Duenez was, in fact, unarmed and unable to flee because his
18  leg was tangled in the truck's seat belt. Id.

19     Plaintiffs allege that defendants had a clear view of Mr.
20  Duenez, they did not see Mr. Duenez possess any weapon, they
21  should have known that Mr. Duenez's leg was tangled, and they
22  never saw Mr. Duenez move toward them or charge at them in a
23  threatening manner. Id.  Plaintiffs seek: (1) the reasonable
24  value of funeral and burial expenses; (2) wrongful death
25  damages; (3) damages incurred by Mr. Duenez before he died as
26  the result of being assaulted and battered, for deprivation

6

1  without due process of his right to life, for penalties or

2  punitive damages to which he would have been entitled to recover

3  had he lived, and for pain, suffering, and disfigurement prior

4  to his death; (4) compensation for their loss of Mr. Duenez's

5  financial support; (5) an award of punitive damages; and (6)

6  attorneys' fees.  Id. at ¶¶ 25-30.

7  **II. STANDARDS FOR MOTION TO DISMISS, TO STRIKE, AND FOR A MORE**

8  **DEFINITE STATEMENT**

9  **A.  MOTION TO DISMISS**

10      A Fed. R. Civ. P. 12(b)(6) motion challenges a complaint's

11  compliance with the pleading requirements provided by the

12  Federal Rules.  Under Federal Rule of Civil Procedure 8(a)(2), a

13  pleading must contain a "short and plain statement of the claim

14  showing that the pleader is entitled to relief."  The complaint

15  must give defendant "fair notice of what the claim is and the

16  grounds upon which it rests."  Bell Atlantic v. Twombly, 550

17  U.S. 544, 555 (2007) (internal quotation and modification

18  omitted).

19      To meet this requirement, the complaint must be supported

20  by factual allegations.  Ashcroft v. Iqbal, 556 U.S. 662, ___ ,

21  129 S. Ct. 1937, 1950 (2009).  "While legal conclusions can

22  provide the framework of a complaint," neither legal conclusions

23  nor conclusory statements are themselves sufficient, and such

24  statements are not entitled to a presumption of truth.  Id. at

25  1949-50.  Iqbal and Twombly therefore prescribe a two step

26  process for evaluation of motions to dismiss.  The court first

identifies the non-conclusory factual allegations, and the court
then determines whether these allegations, taken as true and
construed in the light most favorable to the plaintiff,
"plausibly give rise to an entitlement to relief." Id.;
Erickson v. Pardus, 551 U.S. 89 (2007).

"Plausibility," as it is used in Twombly and Iqbal, does
not refer to the likelihood that a pleader will succeed in
proving the allegations.  Instead, it refers to whether the
non-conclusory factual allegations, when assumed to be true,
"allow[] the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged." Iqbal, 129
S.Ct. at 1949. "The plausibility standard is not akin to a
'probability requirement,' but it asks for more than a sheer
possibility that a defendant has acted unlawfully." Id.
(quoting Twombly, 550 U.S. at 557).  A complaint may fail to
show a right to relief either by lacking a cognizable legal
theory or by lacking sufficient facts alleged under a cognizable
legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696,
699 (9th Cir. 1990).

**B. MOTION FOR A MORE DEFINITE STATEMENT**

"If a pleading to which a responsive pleading is permitted
is so vague or ambiguous that a party cannot reasonably be
required to frame a responsive pleading, the party may move for
a more definite statement before interposing a responsive
pleading." Fed. R. Civ. P. 12(e).  "The situations in which a
Rule 12(e) motion is appropriate are very limited." 5A Wright

1   and Miller, <u>Federal Practice and Procedure</u> § 1377 (1990).

2       Furthermore, absent special circumstances, a Rule 12(e)

3   motion cannot be used to require the pleader to set forth "the

4   statutory or constitutional basis for his claim, only the facts

5   underlying it." <u>McCalden v. California Library Ass'n</u>, 955 F.2d

6   1214, 1223 (9th Cir. 1990).  However, "even though a complaint

7   is not defective for failure to designate the statute or other

8   provision of law violated, the judge may in his discretion . . .

9   require such detail as may be appropriate in the particular

10  case." <u>McHenry v. Renne</u>, 84 F.3d 1172, 1179 (9th Cir. 1996).

11  **C. MOTION TO STRIKE**

12      Rule 12(f) authorizes the court to order stricken from any

13  pleading "any redundant, immaterial, impertinent, or scandalous

14  matter."  A party may bring on a motion to strike within 21 days

15  after the filing of the pleading under attack.  The court,

16  however, may make appropriate orders to strike under the rule at

17  any time on its own initiative.  Thus, the court may consider

18  and grant an untimely motion to strike where it seems proper to

19  do so.  <u>See</u> 5A Wright and Miller, Federal Practice and

20  Procedure: Civil 2d 1380.

21      A matter is immaterial if it "has no essential or important

22  relationship to the claim for relief or the defenses being

23  pleaded." <u>Fantasy, Inc. v. Fogerty</u>, 984 F.2d 1524, 1527 (9th

24  Cir. 1993), *rev'd on other grounds* by 510 U.S. 517 (1994).  A

25  matter is impertinent if it consists of statements that do not

26  pertain to and are not necessary to the issues in question.  <u>Id.</u>

9

1   Redundant matter is defined as allegations that "constitute a
2   needless repetition of other averments or are foreign to the
3   issue." Thornton v. Solutionone Cleaning Concepts, Inc., No.
4   06-1455, 2007 WL 210586 (E.D. Cal. Jan. 26, 2007), citing
5   Wilkerson v. Butler, 229 F.R.D. 166, 170 (E.D. Cal. 2005).

6        Motions to strike are generally viewed with disfavor, and
7   will usually be denied unless the allegations in the pleading
8   have no possible relation to the controversy, and may cause
9   prejudice to one of the parties. See 5A C. Wright & A. Miller,
10  Federal Practice and Procedure: Civil 2d 1380; see also Hanna v.
11  Lane, 610 F. Supp. 32, 34 (N.D. Ill. 1985).  However, granting a
12  motion to strike may be proper if it will make trial less
13  complicated or eliminate serious risks of prejudice to the
14  moving party, delay, or confusion of the issues. Fantasy, 984
15  F.2d at 1527-28.

16       If the court is in doubt as to whether the challenged
17  matter may raise an issue of fact or law, the motion to strike
18  should be denied, leaving an assessment of the sufficiency of
19  the allegations for adjudication on the merits.  See
20  Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970 (9th Cir.
21  2010); see also 5A Wright & Miller, supra, at 1380.
22  Whittlestone emphasized the distinction between Rule 12(f) and
23  Rule 12(b)(6) and held that Rule 12(f) does not authorize
24  district courts to strike claims for damages on the ground that
25  such claims are precluded as a matter of law. Id. at 976.
26  ////

1                "Were we to read Rule 12(f) in a manner that
2                allowed litigants to use it as a means to
             dismiss some or all of a pleading . . . we
3                would be creating redundancies within the
             Federal Rules of Civil Procedure."
4                <u>Whittlestone, Inc. v. Handi-Craft Co.</u>, See
             also <u>Yamamoto v. Omiya</u>, 564 F.2d 1319, 1327
5                (9th Cir. 1977) ("Rule 12(f) is neither an
             authorized nor a proper way to procure the
             dismissal of all or a part of a complaint."
6                (Citation omitted)).

7   <u>Id.</u> at 974.

8       <u>Whittlestone</u> reasoned that Rule 12(f) motions are reviewed

9   for abuse of discretion, whereas 12(b)(6) motions are reviewed

10  de novo.   <u>Id.</u>   Thus, if a party seeks dismissal of a pleading

11  under Rule 12(f), the district court's action would be subject

12  to a different standard of review than if the district court had

13  adjudicated the same substantive action under Rule 12(b)(6).

14  <u>Id.</u>

15                      **III. ANALYSIS**

16  **A. Claims Against Chief David Bricker and Individual Officers in**

17  **Their Official Capacity**

18      Defendants seek to dismiss all claims against Chief Bricker

19  as well as claims against Officer Aguilar as sued in his

20  official capacity, given that the City of Manteca is a named

21  defendant, rendering the naming of Chief Bricker and Officer

22  Aguilar, in his official capacity, redundant.  Defs' Mot., ECF

23  No. 9, at 7.

24      Official-capacity suits under Section 1983 "generally

25  represent only another way of pleading an action against an

26  entity of which an officer is an agent."  <u>Monell v. Dep't of</u>

1  Soc. Servs., 436 U.S. 658, 690, n.55 (1978).  As long as the

2  government entity receives notice and an opportunity to respond,

3  an official-capacity suit is, in all respects other than name,

4  to be treated as a suit against the entity.  Kentucky v. Graham,

5  473 U.S. 159, 165 n.14 (1985) (holding that "[t]here is no

6  longer a need to bring official-capacity actions against local

7  government officials, [because] under Monell, . . . local

8  government units can be sued directly" (citations omitted); see

9  also Center for Bio-Ethical Reform, Inc. v. Los Angeles County

10  Sheriff, 533 F.3d 780, 799 (9th Cir. 2008) ("An official

11  capacity suit against a municipal officer is equivalent to a

12  suit against the entity.").

13      Although the Ninth Circuit has not decided this precise

14  issue, a number of district courts in the Ninth Circuit have

15  held that if individuals are being sued in their official

16  capacities as municipal officials and the municipal entity

17  itself is also being sued, then the official capacity claims

18  against the individuals are redundant and should be dismissed.

19  See, e.g., Vance v. County of Santa Clara, 928 F.Supp. 993, 996

20  (N.D. Cal. 1996); Carnell v. Grimm, 872 F.Supp. 746, 752 (D.Haw.

21  1994).  In Luke v. Abbott, the court reasoned:

22          After the Monell holding, it is no longer
            necessary or proper to name as a defendant a
23          particular local government officer acting in
            a official capacity.  To do so only leads to
24          a duplication of documents and pleadings, as
            well as wasted public resources for increased
25          attorneys fees.  A plaintiff cannot elect
            which of the defendant formats to use.  If
26          both are named, it is proper upon request for

1          the Court to dismiss the official-capacity
           officer, leaving the local government entity
2          as the correct defendant.

3  954 F.Supp. 202, 203 (C.D. Cal. 1997); accord Arres v. City of

4  Fresno, 2011 WL 284971, at *5-6 (E.D. Cal. 2011).

5       The court here agrees with the reasoning of these district

6  courts.  Because the City of Manteca is already named as a

7  defendant in this action, § 1983 claims against agents of the

8  City of Manteca, sued only in their official capacity, would be

9  duplicative in practice.  Thus, Plaintiffs' § 1983 claims

10  against Chief David Bricker, sued only in his official capacity,

11  are DISMISSED as redundant.  Plaintiffs' § 1983 claims against

12  Officer Aguilar in his official capacity are DISMISSED; claims

13  against Officer Aguilar in his individual capacity remain.

14  **B. Fourth Amendment Claims by Plaintiffs D.D., Rosemary Duenez,**

15  **and Ernesto Duenez, Sr.**

16       Defendants argue that, "[t]o the extent that the complaint

17  may be read to assert claims by D.D. (decedent's son), Rosemary

18  and Ernesto Duenez [Sr.] for violation of decedent's Fourth

19  Amendment rights, those claims should be dismissed."  Defs'

20  Mot., ECF No. 9, at 8.

21       Fourth Amendment rights are personal rights which may not

22  be vicariously asserted.  Alderman v. United States, 394 U.S.

23  165, 174, 89 S.Ct. 961 (1969).  The general rule is that only

24  the person whose Fourth Amendment rights were violated can sue

25  to vindicate those rights.  Moreland v. Las Vegas Metro. Police

26  Dep't, 159 F.3d 365, 369 (9th Cir. 1998).  In Section 1983

1 actions, however, the survivors of an individual killed as a

2 result of an officer's excessive use of force may assert a

3 Fourth Amendment claim on that individual's behalf if the

4 relevant state's law authorizes a survival action.  Id.

5    California's survival statute provides that "[a] cause of

6 action that survives the death of the person entitled to

7 commence an action or proceeding passes to the decedent's

8 successor in interest . . . and an action may be commenced by

9 the decedent's personal representative or, if none, by the

10 decedent's successor in interest."  CAL. CIV. PROC. § 377.30;

11 Grant v. McAuliffe, 41 Cal. 2d 859, 264 P.2d 944, 42 A.L.R.2d

12 1162 (1953).

13    Plaintiffs have named only Whitney Duenez as the

14 successor-in-interest to the decedent Ernesto Duenez, Jr.  See

15 Pls' Compl., ECF No. 1, at 2.  Because California's survival

16 statute allows a successor in interest to enforce a cause of

17 action belonging to the decedent, but does not provide for the

18 survival action to be brought by heirs who are not acting as

19 successors in interest,[3] only Whitney Duenez may assert a claim

20 for violation of the decedent's Fourth Amendment rights.

21    Thus, the court GRANTS Defendants' motion and DISMISSES any

22 Fourth Amendment claims brought by Plaintiffs D.D. (decedent's

23

---

24    [3] Note that a person purporting to act as a successor in
   interest must satisfy the requirements under California Code of
25 Civil Procedure § 377.32, which requires a person seeking to
   commence a survival action to execute and file an affidavit setting
26 forth specific information. See CAL. CIV. PROC. § 377.32.

1  son), Rosemary Duenez, and Ernesto Duenez, Sr., WITH LEAVE TO
2  AMEND.

3      Plaintiffs' complaint indicates that all of the plaintiffs
4  are bringing a wrongful death action against the defendants.
5  Pls' Compl., ECF No. 1, at 8.  Although Defendants assert that
6  the standing requirements for bringing a wrongful death action
7  are not at issue in their motion, see Defs' Reply, ECF No. 16,
8  at 4, both parties intertwine arguments regarding the standing
9  required to bring a survival action and the standing required to
10 bring a wrongful death action in California.  In California, a
11 survival action is distinguishable from an action for the
12 wrongful death of the decedent.  Grimshaw v. Ford Motor Co., 119
13 Cal. App. 3d 757, 174 Cal. Rptr. 348 (1981).  California courts
14 have held that a wrongful death action can be maintained either
15 by the decedent's heirs or by the decedent's personal
16 representative on behalf of the heirs, but not both.  See CAL.
17 CIV. PROC. § 377.60; Adams v. Superior Ct., 196 Cal. App. 4th 71,
18 77, 126 Cal. Rptr. 3d 186 (2011); Scott v. Thompson, 184 Cal.
19 App. 4th 1506, 1511, 109 Cal. Rptr. 3d 846 (2010); Gordon v.
20 Reynolds, 187 Cal. App. 2d 472, 474, 10 Cal. Rptr. 73 (1960).

21      Plaintiffs seek leave to amend the complaint to "include
22 any inadvertently omitted references," "correct any inartful
23 verbiage," and "remedy any other pleading deficiencies."  Pls'
24 Opp'n, ECF No. 14, at 10.  The court therefore GRANTS Plaintiffs
25 LEAVE TO AMEND the complaint to, inter alia, more specifically
26 plead the requirements set forth in California's wrongful death

1  statute.  <u>See</u> CAL. CIV. PROC. § 377.60.

2  **C. Claims for Recovery for Decedent's Pain and Suffering**

3  Defendants' argue in their motion that Plaintiffs' claims

4  to recover for decedent's pain, suffering, and disfigurement

5  prior to death are not recoverable and should be "stricken."

6  Defs' Mot., ECF No. 9, at 10.  In Defendants reply to

7  Plaintiffs' opposition, however, Defendants argue that these

8  claims should be "dismissed."  Defs' Reply, ECF No. 16, at 3.

9  The court will therefore analyze Defendants motions under the

10  standards for both a motion to strike and a motion to dismiss.

11  Defendants assert that, as a matter of law in the Eastern

12  District of California, such damages are not recoverable.

13  However, under the Supreme Court's holding in <u>Whittlestone, Inc.</u>

14  <u>v. Handi-Craft Co.</u>, district courts are not authorized to strike

15  claims for damages on the ground that such claims are precluded

16  as a matter of law.  618 F.3d 970, 976 (9th Cir. 2010).  Thus,

17  insofar as Defendants motion is a motion to strike Plaintiffs'

18  claims for damages incurred by Ernesto Duenez, Jr. for his pain,

19  suffering, and disfigurement prior to death, that motion is

20  DENIED.  The court now turns to its analysis construing

21  Defendants motion as a motion to dismiss.

22  Section 1983 does not address survivor claims or any

23  appropriate remedies.  If a civil rights statute is "deficient

24  in the provisions necessary to furnish suitable remedies,"

25  courts must look to applicable state law.  42 U.S.C. § 1988(a).

26  However, state law may not be applied when it is "inconsistent

with the Constitution and laws of the United States." Id.; see
Robertson v. Wegmann, 436 U.S. 584, 594-95, 98 S.Ct. 1991, 56
L.Ed.2d 554 (1978).  The Supreme Court has stated that the
purpose behind the Federal Civil Rights Act is to: (1) prevent
official illegality; and (2) compensate persons for injuries
caused by the deprivation of constitutional rights.  See
Robertson, 436 U.S. at 592, 98 S.Ct. 1991; Carey v. Piphus, 435
U.S. 247, 254, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978).  In
survivor actions in California, "the damages recoverable are
limited to the loss or damage that the decedent sustained or
incurred before death, including any penalties or punitive or
exemplary damages that the decedent would have been entitled to
recover had the decedent lived, and *do not include damages for
pain, suffering, or disfigurement*." CAL. CIV. PROC. § 377.34
(emphasis added).

Neither the Supreme Court nor the Ninth Circuit have
addressed whether or not a state's damage limitations for a
wrongful death claim are inconsistent with § 1983.  See
Robertson, 436 U.S. at 594-95 ("We intimate no view . . . about
whether abatement based on state law could be allowed in a
situation in which deprivation of federal rights caused death");
Mahach-Watkins v. Depee, 593 F.3d 1054, 1060 (9th Cir. 2010)
(acknowledging that "The Ninth Circuit has not addressed the
question of what damages are available under a Section 1983
wrongful death claim"); Smith v. City of Fontana, 818 F.2d 1411,
1417 n.7 (9th Cir. 1987) (acknowledging but declining to decide

1 the issue).

2     Other circuits have concluded that when a violation of

3 federal civil rights results in death of the victim, state

4 statutes limiting the remedies of the victim's estate and family

5 members are not consistent with the purposes of § 1983. See,

6 e.g., Berry v. City of Muskogee, 900 F.2d 1489, 1499-1507 (10th

7 Cir. 1990); Bell v. Milwaukee, 746 F.2d 1205 (7th Cir. 1984),

8 *overruled on other grounds by* Russ v. Watts, 414 F.3d 783 (7th

9 Cir. 2005); Jaco v. Bloechle, 739 F.2d 239, 241-45 (6th Cir.

10 1984). In Bell, the Seventh Circuit explained that the

11 Wisconsin law precluding recovery to the victim's estate for

12 loss of life was inconsistent with the deterrent policy of §

13 1983 and the Fourteenth Amendment's protection of life:

14         [S]ince in the instant case the killing is the
        unconstitutional act, there would result more
15         than a marginal loss of influence on
        potentially unconstitutional actors and
16         therefore on the ability of Section 1983 to
        deter official lawlessness if the victim's
17         estate could not bring suit to recover for
        loss of life.

18

19 Bell, 746 F.2d at 1239. In Berry, the Tenth Circuit held that

20 the application of Oklahoma's survival statute, which arguably

21 limited recovery to property loss and loss of earnings by the

22 decedent between the time of injury and death, would be

23 inconsistent with Congress's intention to provide significant

24 recompense when a constitutional violation causes the death of a

25 victim and would result in deficient deterrence. Berry, 900

26 F.2d at 1506.

1    The district courts within the Ninth Circuit are split on

2   this issue.  Courts in the Eastern District have consistently

3   held that § 377.34's limitation of damages for pain, suffering,

4   or disfigurement is not inconsistent with § 1983.  In reviewing

5   the legislative history of California Civil Procedure Code §

6   377.34, the court in Venerable v. City of Sacramento, 185

7   F.Supp.2d 1128 (E.D. Cal. 2002) noted:

8           The legislature could well conclude that
            recovery for the decedent's pain and suffering
9           is not the better rule given: (1) the
            uncertainty of testimony about how someone,
10          now dead, suffered; (2) the provision for
            compensation to family survivors under the
11          wrongful death statute for their own damages,
            including loss of companionship, and a natural
12          reluctance to add as 'compensation' the injury
            actually suffered by another; and (3) the
13          adequacy of deterrence already provided by the
            possible array of damages for negligent
14          conduct leading to death whether those damages
            are sought under the survival statute or by
15          way of a wrongful death action.

16  Id. at 1132.  The court in Venerable declined to adopt the

17  "cynical proposition that law enforcement officers generally

18  prefer to run the risk of inflicting death than of merely

19  maiming a victim because death cuts off a claim for pain and

20  suffering by the decedent," id. at 1133, and held that the

21  damages provided by the California survival and wrongful death

22  statutes are not inconsistent with the Constitution and laws of

23  the United States, id.  Following Venerable, courts in the

24  Eastern District have consistently held that damages for

25  decedent's pain and suffering are not recoverable in survival

26  actions under § 1983.  See Estate of Contreras ex rel. Contreras

19

1  v. County of Glenn, 725 F.Supp.2d 1151, 1156 (E.D. Cal. 2010);

2  Provencio v. Vazquez, 2008 WL 3982063, at *12 (E.D.Cal. Aug. 18,

3  2008) (holding that pain and suffering claims are precluded

4  because "the statutory scheme for survivors in California still

5  provides compensatory damages for the remaining injured parties,

6  i.e., the survivors"); Rosales v. City of Bakersfield, 2007 WL

7  1847628, at *18 n.11 (E.D. Cal. June 27, 2007); Whitfield v.

8  State of California, 2007 WL 496342, at *2 (E.D. Cal. Feb. 13,

9  2007); Moore ex rel. Moore v. County of Kern, 2006 WL 2190753,

10  at *5-*6 (E.D. Cal. Aug. 1, 2006); Peacock v. Terhune, 2002 WL

11  459810, at *4-*5 (E.D. Cal. Jan. 23, 2002).[4]

12      Courts in the Southern, Central, and Northern Districts,

13  however, have opted not to apply § 377.34's limitation on

14  damages for pain, suffering, or disfigurement, finding it

15  inconsistent with the purposes of § 1983.  See, e.g.,

16  Hirschfield v. San Diego Unified Port Dist., 2009 WL 3248101, at

17  *4 (S.D.Cal. Oct. 8, 2009); Garcia v. Whitehead, 961 F. Supp.

18  230, 233 (C.D. Cal. 1997) (providing, in part, "The Court does

19  not find persuasive the notion that punitive damages provide an

20  adequate deterrent effect.  Even where a constitutional

21  violation is found, punitive damages are never available against

22  the agency itself in a section 1983 action, and are not always

23  warranted against the individual defendant."); Williams v. City

24

25      [4] The California Court of Appeal has similarly held that §
    377.34's limitation of damages is not inconsistent with § 1983.
26  Garcia v. Superior Court, 42 Cal.App.4th 177, 49 Cal.Rptr.2d 580
    (1996).

1  of Oakland, 915 F.Supp. 1074 (N.D.Cal. 1996) (providing, in
2  part, "the amount of [punitive] damages will be governed by the
3  financial condition of the individual officer without regard to
4  the pain and suffering he may have inflicted on the decedent");
5  Guyton v. Phillips, 532 F.Supp. 1154, 1166 (C.D.Cal. 1981)
6  (noting that: "Federal decisional law leaves little doubt that
7  if there were no applicable state survival statute the action
8  would not be permitted to abate.  Otherwise the purpose of the
9  Civil Rights Act of 1871 would be thwarted"; "pain and suffering
10 sustained prior to death is recoverable in a majority of
11 jurisdictions"; and "[t]he inescapable conclusion is that there
12 may be substantial deterrent effect to conduct that results in
13 the injury of an individual but virtually no deterrent to
14 conduct that kills its victim.").

15      The court finds the reasoning provided by the Southern,
16 Central, and Northern Districts of California, as well as other
17 circuit courts, more persuasive than that of Venerable and its
18 progeny in the Eastern District.  While the opinion in Venerable
19 has some persuasive authority, it appears to this court that
20 Venerable denigrates the purposes of Section 1983.

21      However, because the courts in the Eastern District of
22 California have consistently held that § 377.34's limitation on
23 damages is consistent with the purposes of § 1983, and it would
24 be inappropriate to have the results of an issue turn upon
25 whichever judge happens to be assigned to a case, the court will
26 decline to permit a survival action for damages for the

1  decedent's pain, suffering, and disfigurement.

2      Thus, the court GRANTS Defendants' motion to dismiss

3  Plaintiffs' claims for damages incurred by decedent for his

4  pain, suffering, and disfigurement prior to death.  The court

5  notes that the determination regarding whether or not § 377.34's

6  limitation on damages conflicts with the purposes of § 1983 is

7  one involving a controlling question of law, that there is

8  substantial ground for difference of opinion, and that an

9  immediate appeal from the order will materially advance the

10  ultimate termination of the litigation.  Accordingly, the court

11  certifies this issue for interlocutory appeal pursuant to 28

12  U.S.C. § 1292(b).

13  **D. Allegations Mixing Fourth and Fourteenth Amendment Claims**

14      Defendants assert that, in Plaintiffs' complaint, "each

15  cause of action appears to allege a claim by every plaintiff

16  against every defendant under both the Fourth and Fourteenth

17  Amendments," and that "[a]ll of the causes of action, which mix

18  parties and legal theories, should be dismissed or ordered

19  clarified."  Defs' Mot., ECF No. 9, at 10.  The court will

20  construe Defendants' motion in this regard as both a motion to

21  dismiss and as a motion for a more definite statement.

22      In enumerating their causes of action, Plaintiffs have not

23  stated with particularity which plaintiffs are asserting which

24  claims against which defendants.  See, e.g., Pls' Compl., ECF

25  No. 1, at 9 ("Defendants acted under color of law by killing

26  decedent without lawful justification by subjecting decedent to

1 excessive force thereby depriving Plaintiff and the decedent of

2 certain constitutionally protected rights, including . . . The

3 right to be free from unreasonable searches and seizures, as

4 guaranteed by the Fourth and Fourteenth Amendments.").

5     However, the Plaintiffs have alleged sufficient non-

6 conclusory factual allegations concerning Ernesto Duenez, Jr.'s

7 seizure which, if taken as true and construed in the light most

8 favorable to Plaintiffs, plausibly give rise to a finding that

9 the Manteca police officers' seizure and resulting shooting of

10 the decedent was "objectively unreasonable," and thus, that the

11 Defendants acted with excessive force in violation of the

12 decedent's Fourth Amendment rights.  See Graham v. Connor, 490

13 U.S. 386 (1989) (holding that a free citizen's claim that law

14 enforcement officials used excessive force in the course of

15 making a seizure of his person is properly analyzed under the

16 Fourth Amendment's "objective reasonableness" standard).

17 Plaintiffs' complaint, therefore, provides Defendants with "fair

18 notice of what the claim is and the grounds upon which it

19 rests," Bell Atlantic v. Twombly, 550 U.S. 544, 555 (2007).

20 Insofar as Defendants' motion regarding the Plaintiffs' mixture

21 of their Fourth and Fourteenth Amendment claims is a motion to

22 dismiss, Defendants' motion is DENIED.

23     Insofar as Defendants' motion regarding the Plaintiffs'

24 mixture of their Fourth and Fourteenth Amendment claims is a

25 motion for a more definite statement, that motion is DENIED

26 because a Rule 12(e) motion cannot be used to require the

pleader to set forth "the statutory or constitutional basis for his claim, only the facts underlying it." McCalden v. California Library Ass'n, 955 F.2d 1214, 1223 (9th Cir. 1990). Plaintiffs have adequately set forth their alleged facts in this regard.

However, "even though a complaint is not defective for failure to designate the statute or other provision of law violated," the court may "require such detail as may be appropriate in the particular case." McHenry v. Renne, 84 F.3d 1172, 1179 (9th Cir. 1996).

As discussed above, not all of the Plaintiffs may assert Fourth Amendment survival claims against the Defendants and, similarly, not all of the Plaintiffs may assert wrongful death claims against the Defendants. The court has, therefore, found it appropriate to grant Plaintiffs leave to amend their complaint to state which Plaintiffs are asserting each of these claims.

Furthermore, Defendants are correct in arguing that Plaintiffs' claims that the decedent was subject to excessive force should be asserted under the Fourth Amendment of the United States Constitution, and not the Fourteenth Amendment. See Graham v. Connor, 490 U.S. 386, 395, 109 S.Ct. 1865, 1871 (1989) ("all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness'

1  standard, rather than under a 'substantive due process'

2  approach.").  Thus, the court finds it appropriate to ORDER

3  Plaintiffs to amend their complaint accordingly.

4       Finally, under most enumerated causes of action in

5  Plaintiffs' complaint, Plaintiffs properly assert claims for

6  their loss of familial relationships with the decedent under the

7  Fourteenth Amendment alone.  See, e.g., Pls' Compl., ECF No. 1,

8  at 11, 12; see also Curnow By and Through Curnow v. Ridgecrest

9  Police, 952 F.2d 321, 325 (9th Cir. 1991) ("While the person who

10 claims excessive force was directed at him or her can only raise

11 a [F]ourth [A]mendment claim, a parent who claims loss of the

12 companionship and society of his or her child, or vice versa,

13 raises a different constitutional claim. . . [based on] a

14 constitutionally protected liberty interest under the Fourteenth

15 Amendment").  However, Plaintiffs' second cause of action

16 states:

17          Defendants, acting under color of law, and
            without due process of law deprived Plaintiffs
18          of their right to a familial relationship by
            seizing decedent by use of unreasonable,
19          unjustified, cruel and unusual deadly force
            and violence, causing injuries which resulted
20          in decedent's death, all without provocation
            and did attempt to conceal their excessive use
21          of force and hide the true cause of decedent's
            demise to deprive Plaintiffs of their right to
22          seek redress, all in violation of the rights,
            privileges, and immunities secured by the
23          Fourth and Fourteenth Amendments to the United
            States Constitution.  Plaintiffs allege that
24          Defendants acted with an intent to harm
            Decedent unrelated to legitimate law
25          enforcement purposes.

26 Pls' Compl., ECF No. 1, at 9.  This allegation is unclear as to

1  whether Plaintiffs' claim is based on the deprivation of their
2  right to a familial relationship, the unlawful seizure of the
3  decedent, or the Defendants' alleged attempts to conceal their
4  excessive use of force.  Thus, even though Plaintiffs have
5  sufficiently set forth the facts underlying their claims, the
6  court finds it appropriate to ORDER Plaintiffs to clarify this
7  second cause of action.

8      With regard to Defendants as named in the complaint,
9  Plaintiffs are GRANTED LEAVE TO AMEND their complaint in
10  accordance with the court's dismissal of redundant Defendants
11  named in their official capacity.

12  **E. Defendants' Request to Strike Allegations from the Complaint**
13  **as Irrelevant, Improper, and Impertinent**

14      Defendants argue that various allegations in the complaint
15  are irrelevant, improper, and impertinent and should, therefore,
16  be stricken.  Defs' Mot., ECF No. 9, at 11.  The court addresses
17  each of Plaintiffs' assertions in turn.

18      First, Defendants move to strike Plaintiffs' assertion
19  that:

20          Press accounts subsequently released falsely
            claimed Mr. Duenez had approached the Manteca
21          police department officers armed, according to
            the various press accounts, with neither
22          [sic], a knife, a gun, or a weapon.  Some of
            these false accounts were attributed by press
23          to Manteca Police Department sources. . . .
            Press accounts have also reported that Manteca
24          Police Department patrol vehicles are equipped
            with video camera recording devices designed
25          to capture events of police and suspect
            activity on video.
26

Pls' Compl., ECF No. 1, at 1-2.  This assertion bears an important relationship to the question of whether or not Ernesto Duenez, Jr. "pose[d] an immediate threat to the safety of the officers" at the scene, which the factfinder must assess in determining if the officers' actions were "objectively reasonable," in satisfaction of the Fourth Amendment.  See Graham v. Connor, 490 U.S. 386, 396 (1989).  That is, this assertion being true makes it less likely that the decedent "posed an immediate threat to the safety of the officers."  Id. Thus, Defendants' motion to strike is DENIED as to Plaintiff's first assertion.

Second, Defendants move to strike Plaintiffs' assertion that:

> Plaintiffs' attorney has requested the police reports and patrol vehicle video footage of the incident from the Manteca Police Department.  Defendant Manteca Police Department Police Chief David Bricker has refused to provide any such responsive information, invoking various California state law statutory privileges.  Chief Bricker's correspondence refusing to disclose any responsive information is attached to this Complaint as Exhibit A.

Id. at 2.  This assertion also pertains to Plaintiffs' ability to prove whether or not Ernesto Duenez, Jr. posed an immediate threat to the safety of the officers at the scene and the objective reasonableness of the officers' actions.  Defendants' argument that Plaintiffs' assertion "attempt[s] to collaterally attack the denial of the request" raises an issue of law as opposed to an issue of factual pertinence or materiality and,

1  thus, Defendants' motion to strike is DENIED as to Plaintiff's

2  second assertion.

3       Third, Defendants move to strike Plaintiffs' assertion

4  that:

5           Several unidentified Manteca Police Department
            Officers detained . . . [third parties] Rudy
6           Camarena, and Mr. Camarena's wife, all at
            gunpoint.  Then, without a search warrant,
7           probable  cause,  or  exigency,  several
            unidentified Manteca Police Department officer
8           Does  entered  Mr.  Camarena's  residence,
            searched it, and detained several people,
9           including, but not limited to, Mr. Camarena's
            son, and Mr. Camarena's elder mother who is in
10          very poor health. . . . All of the people
            arrested and/or detained at the scene were
11          transported to the Manteca Police Department,
            including, but not limited to . . . Rudy
12          Camarena, and Mr. Camarena's wife and son,
            where they were detained for an excessive
13          period of time and subjected to interrogations
            before being released hours later without any
14          charges.  Each was held against their will
            until their release.

15

16  Id. at 6.  In assessing whether or not a seizure is "objectively

17  reasonable" under the Fourth Amendment, a factfinder is required

18  to pay "careful attention to the facts and circumstances of each

19  particular case."  Graham, 490 U.S. at 396.  The officers'

20  conduct directly following the death of Ernesto Duenez, Jr.

21  pertains to a factfinder's understanding of the circumstances of

22  the case at hand and, thus, is not immaterial or impertinent to

23  the question of whether or not the officers' actions in this

24  case were reasonable.  Thus, Defendants' motion to strike is

25  DENIED as to Plaintiff's third assertion.

26                         **IV. CONCLUSION**

1        For the foregoing reasons, the court GRANTS Defendants'

2   motion, in part, and DENIES Defendants' motion, in part.  The

3   court makes the following orders:

4   •    Plaintiffs' § 1983 claims against Chief David Bricker, sued

5        only in his official capacity, are DISMISSED as redundant.

6        Plaintiffs' § 1983 claims against Officer Aguilar in his

7        official capacity are DISMISSED; claims against Officer

8        Aguilar in his individual capacity remain.  Plaintiffs are

9        GRANTED LEAVE TO AMEND their complaint in accordance with

10       the court's dismissal of redundant Defendants named in

11       their official capacity.

12  •    The court GRANTS Defendants' motion and DISMISSES any

13       Fourth Amendment claims brought by Plaintiffs D.D.

14       (decedent's son), Rosemary Duenez, and Ernesto Duenez, Sr.,

15       WITH LEAVE TO AMEND.

16  •    The court GRANTS Plaintiffs LEAVE TO AMEND the complaint to

17       more specifically accord with the requirements set forth in

18       California's wrongful death statute, Cal. Civ. Proc. §

19       377.60.

20  •    The court ORDERS Plaintiffs to clarify Plaintiffs' second

21       cause of action.

22  •    The court GRANTS Defendants' motion to strike Plaintiffs'

23       claims for damages incurred by decedent for his pain,

24       suffering, and disfigurement prior to death.  The court

25       CERTIFIES this issue for interlocutory appeal pursuant to

26       28 U.S.C. § 1292(b).

1   •    Insofar as Defendants' motion regarding the Plaintiffs'

2        mixture of their Fourth and Fourteenth Amendment claims is

3        a motion to dismiss, Defendants' motion is DENIED.

4   •    Insofar as Defendants' motion regarding the Plaintiffs'

5        mixture of their Fourth and Fourteenth Amendment claims is

6        a motion for a more definite statement, that motion is

7        DENIED.

8   •    Defendants' motion to strike allegations they have

9        identified as being "irrelevant, improper, and impertinent"

10       is DENIED.

11       IT IS SO ORDERED.

12       DATED:  October 26, 2011.

15                            _____

16                       LAWRENCE K. KARLTON

                         SENIOR JUDGE

17                       UNITED STATES DISTRICT COURT