1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10   WHITNEY DUENEZ, individually
     and as successor-in-interest
11   for Decedent ERNESTO DUENEZ,
     JR.; D.D., a minor, by and
12   through his guardian ad
     litem, WHITNEY DUENEZ;
13   ROSEMARY DUENEZ, individually;
     and ERNESTO DUENEZ, SR.,
14   individually,                    NO. CIV. S-11-1820 LKK/KJN

15           Plaintiffs,

16       v.
                                              O R D E R
17   CITY OF MANTECA, a municipal
     corporation; DAVID BRICKER,
18   in his capacity as Chief of
     Police for the CITY OF
19   MANTECA; (FNU) AGUILAR,
     individually and in his
20   official capacity as a police
     officer for the CITY OF
21   MANTECA; and DOES 1-100,
     inclusive,
22
             Defendants.
23   _____/

24       This case arises from the shooting death of Ernesto Duenez,

25   Jr., and is brought pursuant to 42 U.S.C. § 1983.  Plaintiffs

26   allege that Officer John Moody, from the Manteca Police Department,

shot and killed Ernesto Duenez, Jr., in violation of their rights under the Fourth and Fourteenth Amendments to the United States Constitution.   Plaintiffs are Whitney Duenez, the widow and successor-in-interest to the decedent; D.D., the son of the decedent, being represented by his Guardian Ad Litem, Whitney Duenez; Rosemary Duenez, the mother of the decedent; and Ernesto Duenez, Sr., the father of the decedent.   Defendants are the City of Manteca; Chief of Police David Bricker, sued in his individual capacity; Officer John Moody, sued in his individual capacity; and a number of unnamed DOE defendants.

On October 27, 2011, the court issued an order granting in part and denying in part Defendant's motion to dismiss Plaintiffs' complaint.   Order, ECF No. 21.   On November 18, 2011, Plaintiffs filed a first amended complaint.   Pls' First Amend. Compl., ECF No. 23.   Before the court is Defendants' second motion to dismiss, strike, and for a more definite statement, Defs' Mot. Dismiss, ECF No. 27, which Plaintiffs oppose, Pls' Opp'n, ECF No. 29.

## I. FACTUAL ALLEGATIONS[1]

---

[1]   These allegations appear in Plaintiffs' First Amended Complaint, ECF No. 23, unless otherwise specified.   The allegations are taken as true for purposes of this motion only.   See Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007).

In support of their opposition to Defendants' motion to dismiss, Plaintiffs have submitted an alleged copy of the video footage of the subject incident.   Pls' Not., ECF No. 30.   In general, a district court may not consider material beyond the pleadings in ruling on a motion to dismiss for failure to state a claim.   See, e.g., Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989) (citing Fort Vancouver Plywood Co. v. United States, 747 F.2d 547, 552 (9th Cir. 1984)).   The court, therefore, declines to consider Plaintiffs' submitted

1   On June 8, 2011, Ernesto Duenez, Jr. was driven by
2   acquaintances, Rudy Camarena and Rudy Camarena's wife, to a Manteca
3   home, where he retrieved some of his property.  ECF No. 1, ¶ 12.
4   Ernesto Duenez, Jr. dropped his knife on the ground as he retrieved
5   his belongings.  Id.  After he got back into Rudy Camarena's truck,
6   the owner of the Manteca home brought the knife out to the truck
7   and offered to return the knife to Ernesto Duenez, Jr.  Id.  Either
8   Rudy Camarena or Ernesto Duenez, Jr. accepted the knife, and one
9   of them tossed the knife into the bed of the pickup truck, which
10  was not immediately accessible from the cab of the pickup truck.
11  Id.  The homeowner then called the police in reference to Ernesto
12  Duenez, Jr. and told them that Ernesto Duenez, Jr. was armed with
13  a knife.  Id.  This report was relayed to the police by dispatch.
14  Id.

15  That afternoon or late evening, Defendant Officer John Moody
16  was seen driving around the neighborhood of Rudy Camarena's
17  residence.  Id. at ¶ 13.  Local press accounts have since portrayed
18  Rudy Camarena's residence as a suspected drug house, but an
19  unlawful search of the Camarena residence conducted by Manteca
20  police officers found no contraband or evidence that the Camarena
21  residence was involved in any illegal activity.  Id.  No one who
22  lived at the Camarena residence or who was inside the residence at
23  the time of the incident was on probation or parole.  Id.
24  ////

25

26  video footage in ruling on this motion.

1    Shortly before 6:45 P.M., as Mr. Camarena and his wife
2    returned to their home at 242 Flores Street in Manteca with Ernesto
3    Duenez seated in the small backseat of their two-door pickup, Rudy
4    Camarena saw a Manteca Police Department patrol vehicle pass his
5    truck, but the patrol vehicle did not activate its siren or
6    indicate for Rudy Camarena to pull over.  Id. at 13.[2]  At this
7    time, Plaintiff Whitney Duenez, Ernesto Duenez's wife, was inside
8    the Camarena residence, along with other members of Rudy Camarena's
9    family, including Mr. Camarena's elderly mother and the Camarena
10   children.  Id.

11   After Mr. Camarena parked his pick-up truck in its usual
12   parking spot, in the yard of the Camarena residence at 242 Flores
13   Street, a Manteca Police Department patrol vehicle driven by
14   Defendant Officer Moody stopped behind Mr. Camarena's truck and
15   activated its siren light.  Id. at ¶ 14.  Defendant Officer Moody,
16   who later claimed that a warrant had been issued for Ernesto
17   Duenez, Jr.'s arrest, was waiting in his vehicle, staking out Mr.
18   Camarena's residence.  Id.  With the truck's ignition turned off,
19   Ernesto Duenez, Jr., who was in the backseat, began to exit the
20   truck, while Mr. Camarena and his wife remained in the truck.  Id.
21   Ernesto Duenez, Jr. pushed Mr. Camarena's wife forward as he began
22   to exit the truck and stepped his left foot out of the truck, while
23   his right foot was tangled in the seat belt.  Id.  Ernesto Duenez,

24

25       [2] The "Statement of Facts" section of Plaintiff's complaint
     has two paragraphs numbered "13."  See Pls' Compl., ECF No. 1, at
26   4-5.  This fact is taken from the second of those paragraphs.

1   Jr.'s hands were up and he held a dark colored object in one hand
2   that did not appear to be a knife and was likely the glass
3   marijuana smoking-pipe later found at the scene.   Id.   Ernesto
4   Duenez, Jr.'s hands were visible and he took no action consistent
5   with either wielding or simulating any weapon.   Id.

6        Defendant Officer Moody immediately ran around the driver's
7   side of the front of his patrol vehicle with his gun drawn, while
8   yelling at Ernesto Duenez, Jr., "Hands up!  Hands up Ernie!  Don't
9   you move, Ernie, don't you move or I'll shoot you!"  Id. at ¶ 15.
10  Ernesto Duenez, Jr. had opened the door and had begun to step out
11  of the truck.   Id.   Defendant Officer Moody had withdrawn his gun
12  from his holster, even though Ernesto Duenez, Jr. presented no
13  threat.   Id.   Defendant Officer Moody put his gun back in his
14  holster as he yelled again, "Hands up, now!"  Id.  Ernesto Duenez,
15  Jr. was in the process of getting out of the truck, with his hands
16  supporting his weight, one hand on the cab of the truck and one
17  hand on the open passenger door of the truck; the dark object was
18  in the hand on the cab of the truck.   Id.

19       Defendant Officer Moody, standing within 15 feet of Ernesto
20  Duenez, Jr. with his feet spread, knees bent, and hands
21  outstretched, yelled, "Hands up now!"  Id. at ¶ 16.   Ernesto
22  Duenez, Jr.'s hands were supporting his weight on the cab and open
23  door of the truck.   Id.

24       Ernesto Duenez, Jr. dropped to one foot, as was necessary to
25  comply with Defendant Officer Moody's commands, but his other foot
26  was tangled in the passenger side seatbelt of the pickup truck and

1  remained suspended in the air.  Id. at ¶ 17.  Ernesto Duenez, Jr.

2  faced the passenger side of the pickup truck, making no furtive or

3  threatening gesture.  Id.  Defendant Officer Moody again ordered

4  Ernesto Duenez, Jr., "Drop the knife now!"  Id.  Although no knife

5  or weapon was visible, Defendant Officer Moody began to shoot

6  Ernesto Duenez, Jr., firing six gunshots in quick succession by the

7  time Ernesto Duenez, Jr. fell to the ground on his back.  Id.

8  Defendant Officer Moody fired six more gunshots at Ernesto Duenez,

9  Jr. after he fell to the ground, even though no weapon was visible.

10 Id.  After a pause, Defendant Officer Moody shot Ernesto Duenez,

11 Jr. a 13th time, directly into Ernesto Duenez, Jr.'s torso as he

12 lay on the ground.  Id.

13     Plaintiff Whitney Duenez heard gunshots and someone yell her

14 husband's name, "Ernie."  Id. at ¶ 18.  She ran outside the

15 Camarena residence and saw her husband with one foot still stuck

16 inside the seatbelt of the truck.  Id.  Ernesto Duenez, Jr. was

17 bleeding but alive.  Id.

18     Plaintiff Whitney Duenez ran toward her husband, whose body

19 lay on the ground, except for his right foot, which remained

20 entangled in the passenger side seatbelt.  Id. at ¶ 19.  She saw

21 her husband gasping for air.  Id.  Unidentified Manteca Police

22 Department Officers ordered Whitney Duenez to put her hands up, at

23 gunpoint; the officers spoke to her in a rude and derogatory

24 manner; and they eventually handcuffed her.  Id.  Neither Officer

25 Moody nor anyone else attempted to provide Ernesto Duenez, Jr.

26 medical care.  Id.  Defendants further prevented Whitney Duenez,

1  at gunpoint, from giving her husband medical care as he was dying.

2  Id.

3      For almost two minutes, Officer Moody held Ernesto Duenez, Jr.

4  at gunpoint, even after other unknown Defendant Manteca Police

5  Officers arrived at the scene.   Id. at ¶ 20.   Whitney Duenez's

6  pleas for medical attention for her husband were unavailing.   Id.

7      After unsuccessfully attempting to pull Ernesto Duenez, Jr.

8  away from the truck, Defendant Officer Moody used a utility knife

9  to cut the seatbelt in which Ernesto Duenez, Jr.'s leg was stuck.

10  Id. at ¶ 21.   Officer Moody then pulled Ernesto Duenez, Jr. from

11  the truck, flipped him over onto his stomach, and handcuffed his

12  hands behind his back.   Id.

13      Nearly 3 and a half minutes after the shooting, Officer Moody

14  searched Ernesto Duenez, Jr. by going into his pockets, pulling his

15  pants down, pulling his boxers back and looking at Ernesto Duenez,

16  Jr.'s buttocks, and patting various locations on Ernesto Duenez,

17  Jr.'s body.   Id. at ¶ 22.   Officer Moody then searched the yard

18  around Ernesto Duenez, Jr.   Id. Officer Moody told another officer

19  at the scene that he had fired "somewhere in the neighborhood of

20  maybe 6" gunshots at Ernesto Duenez, Jr., and that he was looking

21  for the knife that Ernesto Duenez, Jr. possessed when he exited the

22  truck.   Id.   When that officer asked Officer Moody how Ernesto

23  Duenez, Jr. was doing, Officer Moody responded by asking the

24  officer if he had called the medics yet.   Id. Officer Moody then

25  rolled Ernesto Duenez, Jr. onto his back and continued searching

26  ////

7

1 him.  Id.  At this point, Ernesto Duenez, Jr. was still alive and
2 moaning.  Id.

3     More than 5 minutes after he had finished shooting Ernesto
4 Duenez, Jr., Officer Moody directed an unknown officer to get a
5 trauma kit from his patrol car.  Id. at ¶ 23.  The trauma kit
6 arrived around the same time as the medics, who then provided
7 medical attention to Ernesto Duenez, Jr. for the first time.  Id.

8     It took Defendant Officer Moody 6.6 seconds to exit his patrol
9 vehicle and fire the first shot at Ernesto Duenez, Jr.  Id. at ¶
10 24.  Officer Moody then fired the thirteen rounds over a period of
11 4.6 seconds.  Id.  No weapon other than the knife in the bed of the
12 pickup truck was ever found at the scene of the shooting.  Id. at
13 ¶ 26.  Ernesto Duenez, Jr. never made a motion to reach for that
14 knife, and no object from his person traveled into the bed of the
15 pickup truck during the subject-incident.  Id.

16     Several unidentified officers from the Manteca Police
17 Department then detained Whitney Duenez, Rudy Camarena, and Mr.
18 Camarena's wife at gunpoint after the shooting.  Id. at ¶ 28.
19 Without a search warrant, several unidentified Manteca Police
20 Department officers (named as Defendants "Does") entered the
21 Camarena residence, searched it, and detained several people
22 including Mr. Camarena's son and Mr. Camarena's elderly mother, who
23 is in poor health.  Id.

24     All of the people arrested and/or detained at the scene,
25 including Whitney Duenez, Rudy Camarena, Mr. Camarena's wife, and
26 Mr. Camarena's son, were transported to the Manteca Police

1 Department, where they were detained and interrogated before being

2 released hours later, without any charges. *Id.* at ¶ 29. Each of

3 these people were held against their will until their release. *Id.*

4     Following the shooting, Defendant Chief of Police David

5 Bricker transported Officer Moody to the Manteca Police Station.

6 *Id.* at ¶ 30. In spite of the video evidence of the shooting, David

7 Bricker told local press representatives that when all the facts

8 were out, the officer who had shot Ernesto Duenez, Jr. would be

9 clearly justified in the shooting, as his life had been threatened.

10 *Id.* David Bricker also said that both he and the Manteca Police

11 Department supported Officer Moody's shooting of Ernesto Duenez,

12 Jr. *Id.* Plaintiffs allege that Defendant Bricker had both spoken

13 to Officer Moody about the shooting and had seen video footage of

14 the incident at the time he had made these statements. *Id.*

15 Plaintiffs further allege that Defendant Bricker ratified Officer

16 Moody's shooting of Ernesto Duenez, Jr. as being within the policy

17 of Defendant City of Manteca. *Id.*        Ernesto Duenez, Jr. was on

18 parole and was set to discharge from parole one month after he

19 died. *Id.* at ¶ 31. Mr. Duenez believed that he may have tested

20 positive on a drug test and possibly had a warrant against him for

21 violating parole due to the drug test, which would have caused him

22 to serve minimal time in custody. *Id.*

23     Plaintiffs bring causes of action under the following

24 theories: (1) "Wrongful Death 42 U.S.C. Section 1983," because

25 Defendants Moody and Does "acted under color of law by killing

26 decedent without lawful justification and subjecting decedent to

excessive force thereby depriving Plaintiff [Whitney Duenez and Minor Plaintiff D.D.] and the decedent of . . . [t]he right to be free from unreasonable searches and seizures" and "[t]he right to medical care . . . in violation of substantive Due Process guarantees of the Fourteenth Amendment"; (2) Violations of "All Plaintiffs'" "civil rights to familial relationship--42 U.S.C. section 1983"; (3) "Monell--42 U.S.C. section 1983," as against "Defendant[s] City, Bricker, and Does 51-100"; (4) "Survival action: Violation of decedent's civil rights," brought pursuant to 42 U.S.C. Section 1983; (5) negligent infliction of emotional distress, brought by Plaintiff Whitney Duenez against Defendants Moody and Does 1-10; (6) "Violation of Civil Code Section 52.1," brought by Whitney Duenez, as successor-in-interest to Decedent Ernesto Duenez, Jr., against Defendant Moody, for which Plaintiffs seek injunctive relief; (7) "Negligence-Wrongful Death"; and (8) intentional infliction of emotional distress. Id. at 11-18.

As to damages, Plaintiffs seek: (1) the reasonable value of funeral and burial expenses; (2) wrongful death damages; (3) damages incurred by Mr. Duenez "before he died as the result of being assaulted and battered, for deprivation without due process of his right to life, and [for] any penalties or punitive damages to which he would have been entitled to recover, had he lived"; (4) compensation for their loss of Mr. Duenez's financial support; (5) an award of punitive damages; and (6) attorneys' fees. Id. at ¶¶ 36-41. Plaintiffs also, generally, seek injunctive relief. See, e.g., id. at 19.

## II. STANDARDS FOR MOTION TO DISMISS, STRIKE, AND FOR A MORE DEFINITE STATEMENT

### A. MOTION TO DISMISS

A Federal Rule of Civil Procedure 12(b)(6) motion challenges a complaint's compliance with the pleading requirements provided by the Federal Rules.  Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  The complaint must give defendant "fair notice of what the claim is and the grounds upon which it rests."  Bell Atlantic v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal quotation and modification omitted).

To meet this requirement, the complaint must be supported by factual allegations.  Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009).  "While legal conclusions can provide the framework of a complaint," neither legal conclusions nor conclusory statements are themselves sufficient, and such statements are not entitled to a presumption of truth.  Id. at 1949-50.  Iqbal and Twombly therefore prescribe a two step process for evaluation of motions to dismiss.  The court first identifies the non-conclusory factual allegations, and the court then determines whether these allegations, taken as true and construed in the light most favorable to the plaintiff, "plausibly give rise

////

////

////

11

1   to an entitlement to relief."  Id.; Erickson v. Pardus, 551 U.S.

2   89, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007).[3]

3        "Plausibility," as it is used in Twombly and Iqbal, does not

4   refer to the likelihood that a pleader will succeed in proving the

5   allegations.   Instead, it refers to whether the non-conclusory

6   factual allegations, when assumed to be true, "allow[] the court

7   to draw the reasonable inference that the defendant is liable for

8   the  misconduct  alleged."    Iqbal,  129  S.Ct.  at  1949.  "The

9   plausibility standard is not akin to a 'probability requirement,'

10  but it asks for more than a sheer possibility that a defendant has

11  acted unlawfully."   Id. (quoting Twombly, 550 U.S. at 557).   A

12  complaint may fail to show a right to relief either by lacking a

13  cognizable  legal  theory  or  by  lacking  sufficient  facts  alleged

14  under a cognizable legal theory. Balistreri v. Pacifica Police

15  Dep't, 901 F.2d 696, 699 (9th Cir. 1990).

16  **B. MOTION FOR A MORE DEFINITE STATEMENT**

17       "If a pleading to which a responsive pleading is permitted is

18  so vague or ambiguous that a party cannot reasonably be required

19  to frame a responsive pleading, the party may move for a more

20  definite statement before interposing a responsive pleading." Fed.

21  R. Civ. P. 12(e).  "The situations in which a Rule 12(e) motion is

22  _____

23        [3] The court also may consider certain limited evidence on a
    motion to dismiss.  As an exception to the general rule that non-
24  conclusory factual allegations must be accepted as true on a motion
    to dismiss, the court need not accept allegations as true when they
25  are contradicted by this evidence.  See Mullis v. United States
    Bankr. Ct., 828 F.2d 1385, 1388 (9th Cir. 1987); Durning v. First
26  Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).

1   appropriate are very limited."  5A Wright and Miller, <u>Federal</u>
2   <u>Practice and Procedure</u> § 1377 (1990).

3       Furthermore, absent special circumstances, a Rule 12(e) motion
4   cannot be used to require the pleader to set forth "the statutory
5   or constitutional basis for his claim, only the facts underlying
6   it."  <u>McCalden v. California Library Ass'n</u>, 955 F.2d 1214, 1223
7   (9th Cir. 1990).  However, "even though a complaint is not
8   defective for failure to designate the statute or other provision
9   of law violated, the judge may in his discretion . . . require such
10  detail as may be appropriate in the particular case."  <u>McHenry v.</u>
11  <u>Renne</u>, 84 F.3d 1172, 1179 (9th Cir. 1996).

12  **C. MOTION TO STRIKE**

13      Federal Rule of Civil Procedure 12(f) authorizes the court to
14  order stricken from any pleading "any redundant, immaterial,
15  impertinent, or scandalous matter."  A party may bring on a motion
16  to strike within 21 days after the filing of the pleading under
17  attack.  The court, however, may make appropriate orders to strike
18  under the rule at any time on its own initiative.  Thus, the court
19  may consider and grant an untimely motion to strike where it seems
20  proper to do so.  <u>See</u> 5A Wright and Miller, Federal Practice and
21  Procedure: Civil 2d 1380.

22      A matter is immaterial if it "has no essential or important
23  relationship to the claim for relief or the defenses being
24  pleaded." <u>Fantasy, Inc. v. Fogerty</u>, 984 F.2d 1524, 1527 (9th Cir.
25  1993), *rev'd on other grounds* by 510 U.S. 517 (1994).  A matter is
26  impertinent if it consists of statements that do not pertain to and

1  are not necessary to the issues in question.  <u>Id.</u> Redundant matter

2  is defined as allegations that "constitute a needless repetition

3  of other averments or are foreign to the issue." <u>Thornton v.</u>

4  <u>Solutionone Cleaning Concepts, Inc.</u>, No. 06-1455, 2007 WL 210586

5  (E.D. Cal. Jan. 26, 2007), citing <u>Wilkerson v. Butler</u>, 229 F.R.D.

6  166, 170 (E.D. Cal. 2005).

7      Motions to strike are generally viewed with disfavor, and will

8  usually be denied unless the allegations in the pleading have no

9  possible relation to the controversy, and may cause prejudice to

10  one of the parties. <u>See</u> 5A C. Wright & A. Miller, Federal Practice

11  and Procedure: Civil 2d 1380; <u>see</u> <u>also</u> <u>Hanna v. Lane</u>, 610 F. Supp.

12  32, 34 (N.D. Ill. 1985). However, granting a motion to strike may

13  be proper if it will make trial less complicated or eliminate

14  serious risks of prejudice to the moving party, delay, or confusion

15  of the issues. <u>Fantasy</u>, 984 F.2d at 1527-28.

16      If the court is in doubt as to whether the challenged matter

17  may raise an issue of fact or law, the motion to strike should be

18  denied, leaving an assessment of the sufficiency of the allegations

19  for adjudication on the merits. <u>See</u> <u>Whittlestone, Inc. v.</u>

20  <u>Handi-Craft Co.</u>, 618 F.3d 970 (9th Cir. 2010); <u>see</u> <u>also</u> 5A Wright

21  & Miller, <u>supra</u>, at 1380. <u>Whittlestone</u> emphasized the distinction

22  between Rule 12(f) and Rule 12(b)(6) and held that Rule 12(f) does

23  not authorize district courts to strike claims for damages on the

24  ground that such claims are precluded as a matter of law. <u>Id.</u> at

25  976.

26  ////

1   "Were we to read Rule 12(f) in a manner that allowed litigants

2   to use it as a means to dismiss some or all of a pleading . . . we

3   would be creating redundancies within the Federal Rules of Civil

4   Procedure."   _Whittlestone, Inc. v. Handi-Craft Co._;   _see also_

5   _Yamamoto v. Omiya_, 564 F.2d 1319, 1327 (9th Cir. 1977) ("Rule 12(f)

6   is neither an authorized nor a proper way to procure the dismissal

7   of all or a part of a complaint." (citation omitted)).   _Id._ at 974.

8       _Whittlestone_ reasoned that Rule 12(f) motions are reviewed for

9   abuse of discretion, whereas 12(b)(6) motions are reviewed de novo.

10  _Id._   Thus, if a party seeks dismissal of a pleading under Rule

11  12(f), the district court's action would be subject to a different

12  standard of review than if the district court had adjudicated the

13  same substantive action under Rule 12(b)(6).   _Id._

14                          **III. ANALYSIS**

15  **A. Claim for Injunctive Relief**

16      Defendants argue that Plaintiffs' request for injunctive

17  relief  should  be  dismissed,  stricken,  or  amended  because

18  "[a]bsolutely no factual or legal basis has been alleged to support

19  a claim for injunctive relief" and because "Plaintiffs in no way

20  describe what injunctive relief is sought."   Defs' Mot., ECF No.

21  27, at 7.

22      The  court  cannot  agree.   In  Plaintiffs' First  Amended

23  Complaint, Plaintiffs specifically seek injunctive relief in

24  relation to their sixth cause of action, brought pursuant to

25  ////

26  ////

1  California Civil Code § 52.1.[4]  Pls' First Am. Compl., ECF No. 23,

2  at ¶ 64.  Under Plaintiffs' _Monell_ claim, Plaintiffs state that

3  they "pray for relief as hereinafter set forth," id. at ¶ 52, and

4  later, in their conclusive prayer for relief, Plaintiffs seek

5  "injunctive relief" generally.  Id. at 19.

6      Plaintiffs' claims for injunctive relief are based on

7  cognizable legal theories; that is, Plaintiffs allege ratification

8  on the basis of consistency with policy.  Either such ratification

9  is improper, or the policy is improper.  Thus, the sufficiency of

10  these claims depend upon whether Plaintiffs have pled sufficient

11  facts to support their California Civil Code § 52.1(b) and _Monell_

12  causes of action.  The factual sufficiency of those causes of

13  action, for purposes of a motion to dismiss, are further discussed

14  herein.

15      Defendants are correct in noting that Plaintiffs fail to

16  "describe what injunctive relief is sought" in their First Amended

17  Complaint.  However, Plaintiffs are not required to detail the

18  contours of the injunctive relief sought at the pleading stage.

19      Under Rule 54 of the Federal Rules of Civil Procedure, a final

20  judgment, other than a default judgment, should grant the relief

21  to which each party is entitled, even if that party has not

22  demanded that relief in its pleadings.  Fed. R. Civ. P. 54(c).  If

23  a plaintiff has stated a cause of action for any relief, it is

24

25      [4] Both the California Civil Code § 52.1(b) and Section 1983
    allow individuals bringing suits under their provisions to seek

26  injunctive relief.  See CAL. CIV. CODE § 52.1(b); 42 U.S.C. § 1983.

immaterial what he designates it, or what he has asked for in his prayer for relief; the court will grant him the relief to which he is entitled under the pled facts.  Kansas City, St. L. & C.R. Co. v. Alton R. Co., 124 F.2d 780, 783 (7th Cir. 1941); see also Laird v. Integrated Resources, Inc., 897 F.2d 826, 842 (5th Cir. 1990) (finding that a complaint is sufficient if it sets forth facts which show that the plaintiff is entitled to any relief which the court can grant, even if the party has not demanded such relief in his pleadings); Lim v. Proulx, No. 1:07-cv-01053, 2008 WL 3285916, at *2 (E.D. Cal. Aug. 5, 2008) (relying on the holdings of Kansas City and Laird).  Put another way, the test of a complaint upon a motion to dismiss lies in the claim, not in the demand, so the only issue is whether the claim stated would give the plaintiff a right to any relief, rather than to the particular relief demanded.  Falk v. Levine, 60 F.Supp. 660, 663 (D.Mass. 1945).

Thus, Plaintiffs' failure to describe the injunctive relief sought in no way diminishes the fairness of the notice provided to Defendants "of what the claim is and the grounds upon which it rests."  See Bell Atlantic v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  Defendants' motion to dismiss Plaintiffs' claims for injunctive relief is therefore denied.

Insofar as Defendants' motion as to Plaintiffs' claims for injunctive relief is a motion for a more definite statement, that motion is denied because Plaintiffs have properly designated the statute or other provisions of law violated.

////

1    Insofar as Defendants' motion as to injunctive relief is a

2  motion to strike, that motion is denied because Plaintiffs' claims

3  for injunctive relief bear an "essential or important relationship"

4  their underlying California Civil Code § 52.1(b) and <u>Monell</u> claims.

5  **B. <u>Monell</u> Claim Against the City of Manteca, David Bricker, and**

6  **"Doe" Defendants**

7    Defendants argue that Plaintiffs' <u>Monell</u> claim against the

8  City of Manteca, David Bricker, and "Doe" defendants should be

9  dismissed, stricken, or ordered amended because Plaintiffs fail to

10  "articulate what the alleged policy of the City was, let alone

11  allege a factual basis for such a claim other than in boiler-plate,

12  conclusory terms."  Defs' Mot., ECF No. 27, at 8.

13    A local governmental entity "may not be sued under § 1983 for

14  an injury inflicted solely by its employees or agents. Instead, it

15  is when execution of a government's policy or custom, whether made

16  by its lawmakers or by those whose edicts or acts may fairly be

17  said to represent official policy, inflicts the injury that the

18  government as an entity is responsible under § 1983." <u>Monell v.</u>

19  <u>New York Dep't of Soc. Servs.</u>, 436 U.S. 658, 694, 98 S.Ct. 2018,

20  56 L.Ed.2d 611 (1978).  In order to establish liability for

21  governmental entities under <u>Monell</u>, Plaintiffs will be required to

22  prove: (1) that the plaintiff possessed a constitutional right of

23  which he was deprived; (2) that the municipality had a policy; (3)

24  that this policy amounts to deliberate indifference to the

25  plaintiff's constitutional right; and (4) that the policy is the

26  moving force behind the constitutional violation.  <u>Dougherty v.</u>

1  City of Covina, 654 F.3d 892, 900 (9th Cir. 2011) (citing Plumeau

2  v. Sch. Dist. No. 40 Cnty. of Yamhill, 130 F.3d 432, 438 (9th Cir.

3  1997)).

4      In a Monell claim, there are three ways to show a policy or

5  custom of a municipality: (1) by showing a longstanding practice

6  or custom which constitutes the standard operating procedure of the

7  local government entity; (2) by showing that the decision-making

8  official was, as a matter of state law, a final policymaking

9  authority whose edicts or acts may fairly be said to represent

10 official policy in the area of decision; or (3) by showing that an

11 official with final policymaking authority either delegated that

12 authority to, or ratified the decision of, a subordinate. Villegas

13 v. Gilroy Garlic Festival Ass'n, 541 F.3d 950, 964 (9th Cir. 2008)

14 (internal quotation marks and citations omitted).

15     In Dougherty, the Ninth Circuit affirmed a district court's

16 dismissal of a Monell claim where the pleading "lack[ed] any

17 factual allegations that would separate them from the formulaic

18 recitation of a cause of action's elements deemed insufficient by

19 Twombly." Dougherty, 654 F.3d at 200 (citing Twombly, 550 U.S. at

20 555, 127 S.Ct. 1955).

21     In contrast to the allegations in Dougherty, here Plaintiffs

22 set forth a number of factual allegations in support of their

23 Monell claims. Specifically, Plaintiffs allege that: (1) in spite

24 of video evidence of the shooting, David Bricker told local press

25 representatives that, when all the facts were out, the officer who

26 had shot Ernesto Duenez, Jr. would be clearly justified in the

1   shooting; (2) both he and the Manteca Police Department supported

2   Officer Moody's shooting of Ernesto Duenez, Jr; (3) Defendant

3   Bricker had both spoken to Officer Moody about the shooting and had

4   seen video footage of the incident at the time he had made these

5   statements; and, therefore (4) Defendant Bricker ratified Officer

6   Moody's shooting of Ernesto Duenez, Jr. as being within the policy

7   of Defendant City of Manteca.  Pls' First Am. Compl., ECF No. 23,

8   at 9-10.   Plaintiffs further allege that Defendants thereby

9   deprived Plaintiffs of their Fourth Amendment right to be free from

10  unreasonable searches and seizures, and their Fourteenth Amendment

11  right to a familial relationship.  Id. at 14.

12      Plaintiffs' facts as alleged provide fair notice of the

13  factual basis of their Monell claim and the legal grounds upon

14  which it rests.  See Bell Atlantic v. Twombly, 550 U.S. 544, 555

15  (2007).  Based on their complaint, it is clear that Plaintiffs seek

16  to prove the existence of a policy or custom by showing that

17  Defendant Bricker, as a person with final policymaking authority

18  granted by the Defendant City of Manteca, at the least, ratified

19  the action of, Defendant Officer Moody.  Taking Plaintiffs' factual

20  allegations as true and construing them in the light most favorable

21  to Plaintiffs, these allegations plausibly give rise to an

22  entitlement to relief on a Section 1983 Monell claim.  Plaintiffs

23  need not articulate the intricacies of the alleged policy further

24  at the pleading stage.   Thus, Defendants' motion to dismiss

25  Plaintiffs' Monell claim is denied.

26  ////

1    Because Plaintiffs have asserted a clear factual basis for
2    their <u>Monell</u> claim, the court determines that their claim is not
3    so vague or ambiguous that a party cannot reasonably be required
4    to frame a responsive pleading.  Thus, Defendants' motion for a
5    more definite statement as to Plaintiffs' <u>Monell</u> claim is denied.

6    Finally, the court finds that none of Plaintiffs' allegations
7    in support of their <u>Monell</u> claim are "redundant, immaterial,
8    impertinent, or scandalous," Fed. R. Civ. P. 12(f), and Defendants
9    have failed to identify any such matter in Plaintiffs' claim.
10   Thus, Defendants' motion to strike Plaintiffs' <u>Monell</u> claim is
11   denied.

**C. <u>Monell</u> Claim Against Chief of Police David Bricker, as Sued in His Individual Capacity**

14   Defendants further argue that Plaintiffs' <u>Monell</u> claim against
15   Chief of Police David Bricker, sued in his individual capacity,
16   should be dismissed because "Plaintiffs have alleged no facts
17   supporting a claim of misconduct by Chief Bricker" and "[t]he vague
18   allegations [against him] do not support a ratification theory .
19   . . [and] even if they did, they might create liability for the
20   City, not Chief Bricker."  Defs' Mot., ECF No. 27, at 9.

21   Ninth Circuit precedent provides that a government actor may
22   be sued in his individual capacity under § 1983 where Plaintiffs
23   present evidence that the sued individual was personally involved
24   in the alleged constitutional violations or that he set in motion
25   a series of acts by others which he knew or reasonably should have
26   known would cause constitutional injury.  See <u>Johnson v. Duffy</u>, 588

1  F.2d 740, 743 (9th Cir. 1978).  A person subjects another to the
2  deprivation of a constitutional right, within the meaning of
3  Section 1983, if he does an affirmative act, participates in
4  another's affirmative acts, or omits to perform an act which he is
5  legally required to do that causes the deprivation of which the
6  plaintiff's complaint is made.  Id.

7       Plaintiffs' facts as alleged, taken as true and construed in
8  the light most favorable to Plaintiffs, plausibly indicate that
9  Defendant David Bricker, as the Chief of Police, has final
10 policymaking authority granted by the City of Manteca.   The
11 affirmative statements Defendant Bricker made to the press
12 supporting Officer Moody's shooting of Ernesto Duenez, Jr., and
13 allegedly made after having viewed a video recording of the subject
14 incident, plausibly indicate that Defendant Bricker personally
15 ratified the actions of Defendant Officer Moody.  These factual
16 allegations are sufficient, at the pleading stage, to provide
17 Defendants fair notice of the Monell claim against Defendant
18 Bricker, sued in his individual capacity, and the grounds upon
19 which that claim rests.  The court therefore denies Defendants'
20 motion to dismiss Plaintiffs' Monell claim against Defendant
21 Bricker, sued in his individual capacity.
22 **D. "Jumbled" Causes of Action**
23         **i. Plaintiffs' First Cause of Action**
24      Defendants argue that Plaintiffs' first cause of action is
25 "jumbled" because it impermissibly brings a federal claim for
26 wrongful death.  See Defs' Mot., ECF No. 27, at 9-10.  Plaintiffs'

first cause of action for "Wrongful Death 42 U.S.C. Section 1983," is based on allegations of excessive force and denial of the right to medical care.

It is true that there is a wrongful death action under state law. _See_ CAL. CIV. PROC. CODE §§ 377.60-377.62. But that hardly means the Plaintiffs cannot bring an excessive force claim under the Fourth Amendment. _See_ _Ward v. City of San Jose_, 967 F.2d 280, 284 (9th Cir. 1991); _Curnow v. Ridgecrest Police_, 952 F.2d 321, 325 (9th Cir. 1991); _Eberle v. City of Anaheim_, 901 F.2d 814, 820 (9th Cir. 1990).

The rights of those in police custody to receive medical treatment arise under the Due Process Clause of the Fourteenth Amendment. _Carnell v. Grimm_, 74 F.3d 977, 979 (1996).

Thus, Plaintiffs' § 1983 claims of excessive force and denial of the right to medical care can be pursued under the Fourth and Fourteenth Amendments. Plaintiffs' claim is indeed that the death alleged was "wrongful" but in this context it was wrongful by virtue of the federal Constitution.

**ii.  Plaintiffs' Second Cause of Action**

Defendants argue that Plaintiffs' second cause of action impermissibly includes Ernesto Duenez, Jr.'s estate in the claim for loss of familial relationship and "the Decedent could not have lost familial relationships before his death." Defs' Mot., ECF No. 27, at 10-11. The court agrees.

Allowing a decedent, through his estate, to sue for his own lost relationships with family members based on his death, and not

23

the death of another family member during his life, violates common sense.  Cf. Crumpton v. Gates, 947 F.2d 1418, 1422 (9th Cir. 1991) ("Assume parent and child were run over and killed by a driver who was at fault.  While both estates could sue for wrongful death, neither could make out a claim for loss of familial companionship, for neither would appreciate the loss of the other.") (dicta).

Thus, Plaintiffs may not include Ernesto Duenez, Jr.'s estate in their second cause of action for loss of familial relationship. The claim of the estate in the second cause of action is stricken.

**E. Compliance with California Tort Claims Act ("CTCA")**

Defendants argue that "Plaintiffs' failure to plead compliance with the Tort Claims Act requires dismissal of all [of their] state-law claims."  Defs' Mot., ECF No. 27, at 11.  Defendants also, however, request "judicial notice of Plaintiffs' tort claim to show, post, that Plaintiffs have impermissibly exceeded the scope of their tort claim."  Id. at 12.  Defendants state that if the court judicially notices Plaintiffs' tort claims, "it can reach the issue of whether the complaint exceeds the scope of the claim, rather than dismissing the State-law claims and then subsequently addressing [whether or not] a future amended complaint exceed[s] the scope of the [state] claim."  Defs' Mot., ECF No. 27, Ex. 1, at 2.  The court first addresses Defendants' request for judicial notice.

**i. Request for Judicial Notice**

Facts subject to judicial notice may be considered on a motion to dismiss.  Mullis v. United States Bankr. Ct., 828 F.2d 1385,

1  1388 (9th Cir. 1987).  The court can judicially notice matters of
2  public record.  <u>See</u> Fed. R. Evid. 201(b); <u>Lee v. City of Los</u>
3  <u>Angeles</u>, 250 F.3d 668, 689 (9th Cir. 2001) (citing <u>Mack v. South</u>
4  <u>Bay Beer Distrib.</u>, 798 F.2d 1279, 1282 (9th Cir. 1986)).  However,
5  a court may not take judicial notice of a fact that is "subject to
6  reasonable dispute." <u>Lee</u>, 250 F.3d at 689.

7       Here, the court takes judicial notice of the fact that on June
8  30, 2011, Plaintiffs filed a claim, "[p]ursuant to Government Code
9  § 910 et seq.," with the City of Manteca based on the June 8, 2011
10 shooting death of Ernesto Duenez, Jr., in which Plaintiffs alleged
11 violations of their rights under various California statutes and
12 common law tort theories.  <u>See</u> Defs' Mot., ECF No. 27, Ex. 1, at
13 3-6.  In their filed claim against the City of Manteca, Plaintiffs
14 set forth the alleged date, place, and circumstances of the
15 shooting in substantial detail.  <u>See</u> <u>id.</u>

16      **ii. Pleading Compliance with the California Tort Claims Act**
17      **("CTCA")**

18      Under the CTCA, a plaintiff may not maintain an action for
19 damages against a public entity unless a written claim has first
20 been presented to the appropriate entity and has been acted upon
21 by that entity before filing suit in court.  <u>See</u> Cal. Gov't Code §§
22 905, 945.4, 950.2; <u>Mangold v. California Pub. Utilis. Comm'n.</u>, 67
23 F.3d 1470, 1477 (9th Cir. 1995).

24      State law claims brought in federal court pursuant to 42
25 U.S.C. § 1983 are subject to dismissal for failure to allege
26 compliance with the claim-filing requirement of the CTCA.  <u>Karim-</u>

Panahi v. Los Angeles Police Dep't, 839 F.2d 621, 627 (9th Cir. 1988).  The CTCA applies to state law claims wherever those claims are brought, and the requirement that a plaintiff must affirmatively allege compliance with the CTCA applies in federal court.  Id.  "Complaints that do not allege facts demonstrating either that a [tort] claim was timely presented or that compliance with the claims statute is excused are subject to [dismissal]." Shirk v. Vista Unified Sch. Dist., 42 Cal.4th 201, 209, 64 Cal.Rptr.3d 210, 164 P.3d 630 (2007); Superior Court (Bodde), 32 Cal.4th at 1243, 13 Cal.Rptr.3d 534, 90 P.3d 116 (plaintiff must allege facts "demonstrating or excusing compliance with the claim presentation requirement"); see also Gurrola v. Cnty. of Los Angeles, 153 Cal.App.3d 145, 153, 200 Cal.Rptr. 157 (1984) ("'timely compliance with the claim filing requirements . . . must be pleaded in a complaint in order to state a cause of action'").

The CTCA requires that, before filing suit, an individual seeking to recover in tort against a public entity for claims relating to death or injury to a person must present the claim to the entity "not later than six months after the accrual of the cause of action." CAL. GOV'T CODE §§ 905, 911.2, 945.4.  State law tort causes of action generally accrue when the wrongful act is committed. Collins v. Cnty. of Los Angeles, 241 Cal.App.2d 451, 454, 458, 50 Cal.Rptr. 586 (1966).

In the instant case, the shooting death of Ernesto Duenez, Jr. occurred on June 8, 2011, and Plaintiffs filed their state claims with the City of Manteca on June 30, 2011--well within six months

1  of the accrual of their cause of action.  Although, in their first

2  amended complaint, Plaintiffs failed to allege any facts

3  demonstrating or excusing compliance with the claim presentation

4  requirements of the CTCA.  Nonetheless, at Defendants' request, the

5  court has taken judicial notice of the fact that Plaintiffs timely

6  filed a claim with the City of Manteca before filing suit in this

7  court.  To grant Defendants' motion under the circumstances places

8  form above substance.  Thus, the court will not dismiss Plaintiffs'

9  state law claims due to Plaintiffs' failure to specifically plead

10  compliance with the CTCA.

11     **iii. Exceeding the Scope of Plaintiffs' Section 910 Claim**

12     The court next addresses Defendants' arguments that Plaintiffs

13  "have impermissibly exceeded the scope of their tort claim."

14     Under the CTCA, plaintiffs may not allege causes of action

15  that are not reflected in their Section 910 claim.  See Stockett

16  v. Ass'n of Cal. Water Agencies Joint Powers Ins. Auth., 34 Cal.4th

17  441, 447, 99 P.3d 500 (Cal. 2004).  The Section 910 claim need not

18  specify each particular act or omission later proven to have caused

19  the injury.  Id.  A complaint's fuller exposition of the factual

20  basis beyond that given in the claim is not fatal, so long as the

21  complaint is not based on an "entirely different set of facts."

22  Id.  Only where there has been a "complete shift in allegations,

23  usually involving an effort to premise civil liability on acts or

24  omissions committed at different times or by different persons than

25  those described in the claim," have courts generally found a

26  complaint barred.  Id. (internal citations omitted).  Where a

1  complaint merely elaborates or adds further detail to a claim, but
2  is predicated on the same fundamental actions or failures to act
3  by the defendants, courts have generally found the claim fairly
4  reflects the facts pled in the complaint.   Id.

5      In their claim filed against the City of Manteca, Plaintiffs
6  set forth the date (June 8, 2011), the place (242 Flores Street,
7  Manteca, California), the public employees ("unknown Manteca Police
8  Department Officer DOES"), and the circumstances of the shooting
9  death of Ernesto Duenez, Jr., in substantial detail.   See Defs'
10 Mot., ECF No. 27, Ex. 1, at 3-6.   For example, the Section 910
11 claim alleges that Ernesto Duenez, Jr. "was in the process of
12 exiting the truck when Manteca Police officers gave him orders to
13 put his hands up," that "his foot was tangled in the right front
14 seatbelt," and that he was "shot several times in the torso" while
15 "unarmed."  Id. at 4.   This claim filed with the City of Manteca
16 is clearly based on the same fundamental actions or failures to act
17 as the claims filed in this court.

18     Thus, Plaintiffs' state law claims filed in this court do not
19 exceed the scope of the claims presented in Plaintiffs' Section 910
20 claims.

21 **F. Claim for Negligent Infliction of Emotional Distress**

22     Defendants argue that Plaintiffs' claim for negligent
23 infliction of emotional distress: (1) fails to "adequately allege
24 that failure to provide medical care damaged the Decedent"; and (2)
25 fails to "adequately allege the Plaintiff witnessed the alleged
26 shooting."  Defs' Mot., ECF No. 27, at 12.   Defendants, however,

1  misstate the legal requirements for establishing a prima facie

2  claim for negligent infliction of emotional distress.

3      To establish a claim for negligent infliction of emotional

4  distress for injuries inflicted upon a third person, a plaintiff

5  must satisfy a three-part test: plaintiff "(1) is closely related

6  to the injury victim; (2) is present at the scene of the injury-

7  producing event at the time it occurs and is then aware that it is

8  causing injury to the victim; and (3) as a result suffers serious

9  emotional distress--a reaction beyond that which would be

10  anticipated in a disinterested witness and which is not an abnormal

11  response to the circumstances." Bird v. Saenz, 28 Cal.4th 910,

12  915, 123 Cal.Rptr.2d 465, 51 P.3d 324 (2002) (internal quotations

13  omitted).

14      Here, Plaintiffs have alleged that Whitney Duenez was the wife

15  of Ernesto Duenez, Jr.; thus, she was closely related to the injury

16  victim.  Plaintiffs also allege that Whitney Duenez was close

17  enough to the shooting to hear the gunshots and run outside the

18  Camarena residence in time to see her husband gasp for air before

19  he died.  Thus Plaintiffs have pled that Whitney Duenez was present

20  at the scene of the injury.  Furthermore, the facts as alleged

21  would lead any reasonable factfinder to infer that Whitney Duenez,

22  as the wife of Ernesto Duenez, Jr., suffered emotional distress

23  beyond that of a disinterested witness.  In sum, the facts as

24  alleged adequately establish Plaintiff's prima facie case for

25  negligent infliction of emotional distress.

26  ////

1    Defendants' motion to dismiss Plaintiffs' claim for negligent
2    infliction of emotional distress is denied.
3    **G. Claim Brought Pursuant to the Tom Bane Civil Rights Act,**
4    **California Civil Code § 52.1**
5    Defendants argue that Plaintiffs fail to adequately plead a
6    Bane Act claim because Plaintiffs did not "identify any specific
7    right that was interfered with or . . . allege that Decedent
8    reasonably believed that he could not exercise a particular right
9    without having violence committed against him." Defs' Mot., ECF
10   No. 27, at 14.
11   The Tom Bane Civil Rights Act, California Civil Code § 52.1,
12   provides that "[a]ny individual whose exercise or enjoyment of
13   rights secured by the Constitution or laws of the United States,
14   or of rights secured by the Constitution or laws of this state, has
15   been interfered with, or attempted to be interfered with [by
16   threats, intimidation, or coercion], may institute and prosecute
17   . . . a civil action for damages." CAL. CIV. CODE § 52.1(a-b).
18   While initially considered to only apply to crimes motivated by
19   discriminatory animus or intent, the California Supreme Court has
20   subsequently broadened its coverage to include any unconstitutional
21   acts or acts contrary to statutory law "so long as those acts were
22   accompanied by the requisite threats, intimidation, or coercion."
23   Veneqas v. Cnty. of Los Angeles, 32 Cal.4th 820, 843, 11
24   Cal.Rptr.3d 692, 87 P.3d 1 (2004). Specifically, in Veneqas, the
25   California Supreme Court permitted a Section 52.1 claim to
26   accompany a Section 1983 claim for an unreasonable detention,

search, and seizure.  Id. at 827, 11 Cal.Rptr.3d 692, 87 P.3d 1.
Subsequently, California courts have held that Section 52.1 claims
are viable when plaintiff has a claim for excessive force by a law
enforcement officer.  See, e.g., Thompson v. Cnty. of Los Angeles,
142 Cal.App.4th 154, 172-73, 47 Cal.Rptr.3d 702 (Cal.Ct.App. 2006);
City of Simi Valley v. Superior Ct., 111 Cal.App.4th 1077, 1082-84,
4 Cal.Rptr.3d 468 (Cal.Ct.App. 2003).  Thus, if Plaintiffs' facts
as alleged establish a prima facie claim for excessive force,
Defendants' motion to dismiss Plaintiffs' Section 52.1 claim must
be denied.

The elements of a Section 52.1 excessive force claim are
essentially identical to those of a § 1983 excessive force claim.
Corser v. Cnty. of Merced, No. 1:05-cv-00985, 2009 WL 174144, at
*25 (E.D. Cal. Jan 26, 2009) (Wanger) (citing Edson v. City of
Anaheim, 63 Cal.App.4th 1269, 1273, 74 Cal.Rptr.2d 614 (1998) and
City of Simi Valley v. Superior Ct., 111 Cal.App.4th 1077, 1085,
4 Cal.Rptr.3d 468 (2003)).  Where a plaintiff's claims under the
federal and state constitutions are co-extensive, the discussion
of a plaintiff's federal constitutional claim resolves both the
federal and state constitutional claims.  Los Angeles County Bar
Ass'n v. Eu, 979 F.2d 697, 705 (9th Cir. 1992) (citing Payne v.
Superior Ct., 17 Cal.3d 908, 914 n.3, 132 Cal.Rptr. 405, 553 P.2d
565 (1976)).

A claim against law enforcement officers for excessive force
is analyzed under the Fourth Amendment's "objective reasonableness"
standard.  Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d

912, 921 (9th Cir. 2001).   The most important factor in judging whether the use of force is reasonable is the immediacy of the threat posed by the suspect to the officers.  Graham v. Connor, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989); Chew v. Gates, 27 F.3d 1432, 1441 (9th Cir. 1994) (citing Tennessee v. Garner, 471 U.S. 1, 11, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985)).

Here, Plaintiffs' allege that Ernesto Duenez, Jr. was not carrying a weapon when he was shot.  According to their complaint, Ernesto Duenez, Jr. was likely holding a glass marijuana smoking-pipe.  Plaintiffs further allege that one of Ernesto Duenez, Jr.'s feet was caught in the seatbelt of the truck from the time he was initially shot until his death.  Given these circumstances, and viewing these allegations in the light most favorable to Plaintiffs, it was unlikely that Ernesto Duenez, Jr. could have posed an immediate threat to the officers at the scene.  The court therefore finds that it was objectively unreasonable for the Defendant officers to view Ernesto Duenez as such an immediate threat that deadly force was required against him.

Thus, Plaintiffs have plead sufficient facts to establish a prima facie claim for excessive force.   Defendants' motion to dismiss Plaintiffs' California Civil Code § 52.1 claim is denied.

**H. Claim for Intentional Infliction of Emotional Distress**

Defendants argue that Plaintiffs' intentional infliction of emotional distress claim fails because Plaintiffs "fail to allege facts to support the claim that Defendant Moody intended to cause emotional distress to Plaintiff Whitney Duenez." Defs' Mot., ECF

1  No. 27, at 15.  Defendants' argument fails because Plaintiffs need

2  not allege that Defendant Moody specifically intended to cause

3  emotional distress to Plaintiff Whitney Duenez.

4      To establish the intent required for a prima face claim for

5  intentional infliction of emotional distress, the plaintiff need

6  only show: "(1) extreme and outrageous conduct by the defendant

7  with the intention of causing, or reckless disregard of the

8  probability of causing, emotional distress."  Christensen v.

9  Superior Ct., 54 Cal.3d 868, 903, 2 Cal.Rptr.2d 79, 820 P.2d 181

10 (1991) (internal quotations omitted).  To prove that defendant's

11 conduct is "outrageous[, it] must be so extreme as to exceed all

12 bounds of that usually tolerated in a civilized community."  Id.

13     Taking Plaintiffs' factual allegations as true paints a

14 picture of Defendant Moody's conduct that is indeed extreme and

15 outrageous.  According to Plaintiffs, Defendant Moody fired

16 thirteen rounds at an unarmed man over a period of 4.6 seconds from

17 a distance of or around 15 feet, while the man was likely

18 immobilized with his foot caught in a seatbelt.  Plaintiffs also

19 allege that Defendant Moody pulled the man's pants down and

20 searched his buttocks, and that he failed to provide the man with

21 medical attention, all while the man's wife was nearby.  These

22 factual allegations, taken as true, lead the court to determine

23 that Defendant Moody's conduct exceeded all bounds of that usually

24 tolerated in a civilized community and show a reckless disregard

25 for the probability of causing emotional distress to Plaintiff

26 Whitney Duenez.

1       Thus, Plaintiffs have sufficiently pleaded facts establishing
2   the intent required for a prima facie claim for intentional
3   infliction of emotional distress.  Defendants' motion to dismiss
4   Plaintiffs' claim for intentional infliction of emotional distress
5   is denied.

6   **F.  Claim for Loss of Right to Life**

7       Defendants argue that Plaintiffs' "stray . . . assertion of
8   entitlement to recovery for 'decedent's loss of life' is improper"
9   and should be stricken.  Defs' Mot., ECF No. 27, at 15.
10  Plaintiffs' claimed damages for "deprivation without due process
11  of [Ernesto Duenez, Jr.'s] right to life" is, indeed, confusing.

12      In their opposition, Plaintiffs clarify that these claimed
13  damages are based on their state claims for wrongful death,
14  pursuant to California Code of Civil Procedure § 377.34, and
15  Plaintiffs' § 1983 excessive force claim.  Because inclusion of the
16  phrase "right to life" in this context is immaterial, in that the
17  phrase bears no essential or important relationship to the
18  Plaintiffs' asserted claims for relief, see <u>Fantasy, Inc. v.</u>
19  <u>Fogerty</u>, 984 F.2d 1524, 1527 (9th Cir. 1993), the court grants
20  Defendants' motion to strike in this regard.

21                  **IV. CONCLUSION**

22      For the foregoing reasons, the court DENIES Defendants' motion
23  to dismiss and GRANTS the motion to strike as specified above.

24      IT IS SO ORDERED.

25      DATED:  February 22, 2012.

26

                                LAURENCE K. KARLTON
                                SENIOR JUDGE
                                UNITED STATES DISTRICT COURT