1
2
3
4
5
6
7                    IN THE UNITED STATES DISTRICT COURT

8                   FOR THE EASTERN DISTRICT OF CALIFORNIA

9
10
11   WHITNEY DUENEZ et al.,

12              Plaintiffs,              No. 2:11-cv-1820 LKK AC

13         v.

14   CITY OF MANTECA et al.,

15              Defendants.             ORDER

16   _____/

17              This case arises from the shooting death of Ernesto Duenez, Jr. ("decedent"), and

18   is brought pursuant to 42 U.S.C. § 1983.  Plaintiffs are the widow and successor-in-interest to the

19   decedent, decedent's son, and decedent's parents.  Defendants are the City of Manteca ("the

20   City"); Chief David Bricker of the Manteca Police Department; Officer Moody of the Manteca

21   Police Department, being sued individually and in his official capacity; and Does 2-100.  This

22   case is before the undersigned on plaintiffs' November 5, 2012 motion to compel and motion for

23   sanctions, which the undersigned heard on February 20, 2013.  Benjamin Nisenbaum appeared

24   for plaintiffs.  Sean Conley appeared for defendants.  On review of the motions, the joint

25   discovery statement, upon hearing the arguments of counsel, and good cause appearing therefor,

26   THE COURT FINDS AS FOLLOWS:

                                         1

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

A    Factual Allegations

The court incorporates by reference the factual allegations as provided in the February 23, 2012 order issued by the Honorable Lawrence K. Karlton denying defendants' motion to dismiss and motion for more definite statement but granting their motion to strike. ECF No. 35.

B.    Relevant Procedural Background

Plaintiffs initiated this federal civil rights action on July 11, 2011 and are proceeding on a first amended complaint ("FAC") filed November 18, 2011 against the City, Bricker, and Moody.  Plaintiffs bring causes of action under the following theories: (1) "Wrongful Death 42 U.S.C. Section 1983," because Defendants Moody and Does "acted under color of law by killing decedent without lawful justification and subjecting decedent to excessive force thereby depriving Plaintiff [Whitney Duenez and Minor Plaintiff D.D.] and the decedent of . . . [t]he right to be free from unreasonable searches and seizures" and "[t]he right to medical care . . . in violation of substantive Due Process guarantees of the Fourteenth Amendment"; (2) Violations of "All Plaintiffs'" "civil rights to familial relationship--42 U.S.C. section 1983"; (3) "Monell – 42 U.S.C. section 1983," as against "Defendant[s] City, Bricker, and Does 51-100"; (4) "Survival action: Violation of decedent's civil rights," brought pursuant to 42 U.S.C. Section 1983; (5) negligent infliction of emotional distress, brought by Plaintiff Whitney Duenez against Defendants Moody and Does 1-10; (6) "Violation of Civil Code Section 52.1," brought by Whitney Duenez, as successor-in-interest to Decedent Ernesto Duenez, Jr., against Defendant Moody, for which Plaintiffs seek injunctive relief; (7) "Negligence-Wrongful Death"; and (8) intentional infliction of emotional distress.  Id. at 11-18.

As to damages, Plaintiffs seek: (1) the reasonable value of funeral and burial expenses; (2) wrongful death damages; (3) damages incurred by Mr. Duenez "before he died as the result of being assaulted and battered, for deprivation without due process of his right to life,

2

1  and [for] any penalties or punitive damages to which he would have been entitled to recover, had

2  he lived"; (4) compensation for their loss of Mr. Duenez's financial support; (5) an award of

3  punitive damages; and (6) attorneys' fees. Id. at ¶¶ 36-41. Plaintiffs also, generally, seek

4  injunctive relief. See, e.g., id. at 19.

5          On October 29, 2012, a protective order issued based on the stipulation of the

6  parties. ECF No. 45.

7          On December 21, 2012, defendants filed a motion to dismiss, motion to strike,

8  and motion for more definite statement. ECF No. 27. On February 23, 2012, Judge Karlton

9  denied defendants' motion to dismiss and motion for more definite statement but granted their

10  motion to strike.

11  C.     Discovery Background

12          On June 26, 2012, plaintiffs propounded their Request for Production of

13  Documents ("RFP") to defendant City, and granted defendant an extension of time to respond by

14  August 29, 2012. On August 28, 2012, the City served its responses and objections. On August

15  30, 2012, plaintiff sent a meet and confer letter addressing the objections raised in the City's

16  response. On October 18, 2012, the City responded substantively and provided a declaration and

17  a privilege log.

18          Still dissatisfied with the City's responses and the parties' meet and confer

19  efforts, plaintiffs filed the instant motion to compel and motion for sanctions on November 5,

20  2012. This matter was initially scheduled before the magistrate judge previously assigned to this

21  case, Magistrate Judge Kendall J. Newman, who directed the parties to file a joint discovery

22  statement in compliance with Local Rule 251.

23                               DISCUSSION

24  A.     Plaintiffs' Motion to Compel

25          Plaintiffs bring this motion to compel the City to provide supplemental responses

26  to plaintiffs' RFP. At issue are defendants' objections to RFP Nos. 2, 3, 4, 5, 6, 18, 26, 30, and

3

1    38.  Plaintiffs argue that these requests are relevant to their claim that the City and Chief Bricker

2    ratified the shooting and treatment of decedent in this case, and that they were deliberately

3    indifferent in their duty to train, supervise and discipline their officers.  Plaintiffs assert that

4    proof of these claims is necessarily shown through these requested documents, which will reveal

5    notice and other issues regarding the City's policies of hiring, training, supervision, and control.

6         Defendants object to plaintiffs' requests on grounds of relevance, privilege, and

7    privacy.

8         1.    Legal Standards

9         Federal Rule of Civil Procedure 26(b) establishes the scope of discovery and

10   states in pertinent part:

11        Parties may obtain discovery regarding any nonprivileged matter
          that is relevant to any party's claim or defense including the
12        existence, description, nature, custody, condition and location of
          any documents or other tangible things and the identity and
13        location of person who know of any discoverable matter.

14   Fed. R. Civ. P. 26(b)(1).

15        The court may order discovery of any matter relevant to the subject matter

16   involved in the action.  Relevant information need not be admissible at the trial if the discovery

17   appears reasonably calculated to lead to the discovery of admissible evidence.  "Relevance for

18   purposes of discovery is defined very broadly."  Garneau v. City of Seattle, 147 F.3d 802, 812

19   (9th Cir. 1998).

20        "The party seeking to compel discovery has the burden of establishing that its

21   request satisfies the relevancy requirements of Rule 26(b)(1).  The party opposing discovery then

22   has the burden of showing that the discovery should be prohibited, and the burden of clarifying,

23   explaining or supporting its objections," Bryant v. Ochoa, 2009 WL 1390794 at * 1 (S.D. Cal.

24   May 14, 2009), and are "required to carry a heavy burden of showing" why discovery should be

25   denied.  Blankenship v. Hearst Corp., 519 F.2d 418, 429 (9th Cir. 1975).

26   ////

4

1          Federal Rule of Civil Procedure 34(a) permits each party to serve the opposing

2  party with document requests within the scope of Rule 26(b) that are "relevant to the subject

3  matter involved in the action."  Fed. R. Civ. P. 26(b).  Relevance within the meaning of Rule

4  26(b)(1) is considerably broader than relevance for trial purposes.  See Oppenheimer Fund v.

5  Sanders, 437 U.S. 340, 351 (1978) (citation omitted).  For discovery purposes, relevance means

6  only that the materials sought are reasonably calculated to lead to the discovery of admissible

7  evidence.  Id.  In responding to Rule 34 requests, "the response must either state that inspection

8  and related activities will be permitted as requested or state an objection to the request, including

9  the reasons."  Fed. R. Civ. P. 34(b)(2)(B).  Under Rule 37(a)(3)(B)(iv), "[a] party seeking

10  discovery may move for an order compelling an answer, designation, production, or inspection"

11  if "a party fails to respond that inspection will be permitted—or fails to permit inspection—as

12  requested under Rule 34."  Fed. R. Civ. P. 37(a)(3)(B)(iv).

13          Discovery is not limited to the issues raised in the pleadings and many factual

14  issues may arise during discovery that may not necessarily be related to the merits of the case.

15  See Oppenheimer Fund, 437 U.S. at 351.  In this way, "[d]iscovery itself is designed to help

16  define and clarify the issues."  Id.  But discovery is not unlimited.  See Hickman, 329 U.S. at 507

17  (stating that "discovery, like all matters of procedure, has ultimate and necessary boundaries").

18  "Discovery of matter not 'reasonably calculated to lead to the discovery of admissible evidence'

19  is not within the scope of Rule 26(b)(1)."  Oppenheimer Fund, 437 U.S. at 351-52.

20          2.     Plaintiffs' Requests for Production

21                 a.     RFP No. 2

22          In RFP No. 2, plaintiffs ask the City for "[a]ny and all job applications pertaining

23  to Defendant Officer MOODY."  The City responded to this request as follows:

24          Responding party objects that this category seeks irrelevant
            information, violates Officer Moody's privacy and the official
25          information privilege. Officer Moody was hired in February, 2001,
            more than a decade before the subject incident, and worked
26          continuously for the Manteca Department since that time.  The

1         request seeks records containing personal information concerning
        Officer Moody's education, employment history, medical
2         information, financial information, and these documents have been
        retained by the employing agency as private material, as required
3         by State law, during the period of Officer Moody's employment.
        These documents will not be produced.

4

5                   i.     <u>Relevance</u>

6         Plaintiffs here argue that examination of Officer Moody's prior jobs will help (1)

7 determine his experience with weapons such as "throwing" knives; and (2) may inform

8 examination of his treatment of decedent after the shooting (dragging his body around, pulling

9 down his pants, etc.).  Lastly, plaintiffs assert that all of the background information known to

10 the City when it hired Moody and kept him on is critical to their <u>Monell</u> claim.  Plaintiffs argue

11 that the information sought pertains to evidence of Officer Moody's prior misconduct and

12 defendants' knowledge of and response thereto.

13         Defendant objects to this request on the ground that Officer Moody began

14 working for the Manteca Police Department on February 25, 2001 and that any information

15 contained in the job application is therefore stale and has no real value.  The court overrules this

16 objection on the ground that the potential probative value of these documents outweighs their

17 potential staleness.

18                ii.     <u>Official Information Privilege</u>

19         Rule 501 of the Federal Rules of Evidence provides that the federal law of

20 privilege applies unless state law supplies the rule of decision as to the claim or defense, in

21 which case the state law of privilege applies.  Where the complaint alleges both substantive

22 federal and state law claims concerning the same alleged conduct, the federal law of privilege

23 controls. <u>Agster v. Maricopa County</u>, 422 F.3d 836, 839-40 (9th Cir. 2005), citing <u>Wm. T.</u>

24 <u>Thompson Co. v. Gen. Nutrition Corp.</u>, 671 F.2d 100, 104 (3d Cir. 1982).  <u>See also</u> <u>Williams v.</u>

25 <u>University Medical Center</u>, 760 F. Supp. 2d 1026, 1029-30 (D. Nev. 2010), citing <u>Religious</u>

26 <u>Technology Center v. Wollersheim</u>, 971 F.2d 364, 367 n.10 (9th Cir. 1992); Advisory

1  Committee Notes to Rule 501 (stating that state law applies only in diversity cases).  Privileges

2  are narrowly construed because they impede the full and fair discovery of the truth.  Eureka Fin.

3  Corp. v. Hartford Acc. & Indem. Co., 136 F.R.D. 179, 183 (E.D. Cal. 1991).  Further, the party

4  asserting a privilege has the burden to establish that it applies.  See e.g., United States v. O'Neill,

5  619 F.2d 222, 227 (3rd Cir. 1980).

6          Documents that are a part of the personnel records of officers defending civil

7  rights actions, while containing sensitive information, are within the scope of discovery.  Soto v.

8  City of Concord, 162 F.R.D. 603, 614-15 (N.D. Cal. 1995); Hampton v. City of San Diego, 147

9  F.R.D. 227, 230-31 (S.D. Cal. 1993); Miller v. Pancucci, 141 F.R.D. 292, 296 (C.D. Cal. 1992).

10  In civil rights cases brought under federal statutes, questions of privilege are resolved by federal

11  law.  Kerr v. U.S. District Court for the Northern District of California, 511 F.2d 192, 197 (9th

12  Cir. 1975), aff'd on procedural grounds, 426 U.S. 394 (1976).  "State privilege doctrine, whether

13  derived from statutes or court decisions, is not binding on federal courts in these kinds of cases."

14  Kelly v. City of San Jose, 114 F.R.D. 653, 655 (N.D. Cal. 1987).

15          Defendant invokes the official information privilege, which is commonly referred

16  to as the "Governmental Privilege."[1]  This privilege is recognized under federal common law.

17  Kerr, 511 F.2d at 198.  However, the privilege is only a "qualified privilege" that "must be

18  formally asserted and delineated in order to be raised properly."  Id. at 198 (internal citations

19  omitted).

20          To properly invoke the official information privilege, "[t]he claiming official

21  must 'have seen and considered the contents of the documents and himself have formed the view

22  that on grounds of public interest they ought not to be produced' and state with specificity the

23  rationale of the claimed privilege."  Id.  The party invoking the privilege must at the outset make

24

25          [1]  What the court will refer to here as the official information privilege has variously been
    referred to as the "Government Privilege," "law enforcement privilege," and "a type of
    'executive privilege.'"  See Deocampo v. City of Vallejo, 2007 WL 1589541 (E.D. Cal. 2007) at

26  *4 (citing references for each variant).

a "substantial threshold showing" by way of a declaration of affidavit from a responsible official

with personal knowledge of the matters to be attested to in the affidavit.  Soto v. City of

Concord, 162 F.R.D. 603, 613 (N.D. Cal. 1995).

> The affidavit must include: (1) an affirmation that the agency generated or collected the material in issue and has maintained its confidentiality; (2) a statement that the official has personally reviewed the material in question; (3) a specific identification of the governmental or privacy interests that would be threatened by disclosure of the material to plaintiff and/or his lawyer; (4) a description of how disclosure subject to a carefully crafted protective order would create a substantial risk of harm to significant governmental or privacy interests, and (5) a projection of how much harm would be done to the threatened interests if disclosure were made.

Id.  In addition, "[t]he asserting party, as in any case where a privilege is claimed, must

sufficiently identify the documents so as to afford the requesting party an opportunity to

challenge the assertion of privilege."  Miller, 141 F.R.D. at 300.

> Once the threshold showing that the official privilege applies, the court balances

the interests and decides whether the conditional privilege applies.  In weighing the interests

involved, a court should consider:

> (1) the extent to which disclosure will thwart government processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which government self-evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking discovery is an actual or potential defendant in any criminal proceeding either pending or reasonably likely to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether any intra-departmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to the plaintiff's case.

Kelly, 114 F.R.D. at 663.  While no one factor is dispositive, the tenth factor – the importance to

the plaintiff's case – is considered the most important.  The balancing approach should be

1   "moderately pre-weighted in favor of disclosure." <u>Soto</u>, 162 F.R.D. at 613.

2         In determining the protection afforded by the privilege, courts conduct a case by

3   case balancing analysis, in which the interests of the party seeking discovery are weighed against

4   the interest of the governmental entity asserting the privilege. <u>Zackery v. Stockton Police Dep't</u>,

5   2007 WL 1655634, *3 (E.D. Cal. 2007).  In determining the applicability of the official

6   information privilege to the subject material, the court keeps in mind the purpose of the

7   privilege, which is to prevent disclosure of law enforcement techniques and procedures, to

8   preserve the confidentiality of sources, to protect witness and law enforcement personnel, to

9   safeguard the privacy of individuals involved in an investigation, and otherwise to prevent

10  interference with an investigation.  <u>In re Dep't of investigation of City of New York</u>, 856 F.2d

11  481, 484 (2nd Cir. 1988).

12        The City has submitted the affidavit of Jodie Estarziau, an Administrative

13  Sergeant with the Manteca Police Department.  Nisenbaum Decl., Ex. G.  According to

14  Estarziau, Officer Moody's confidential employment application includes personal information

15  such as his home address, telephone number, social security number, and personal job history.  It

16  also reflects personal information concerning medical examinations, psychological testing, and

17  background investigation.  Estarziau asserts that keeping these documents confidential is

18  important not only because it is mandated by state law, but also because it encourages the

19  individual officer's personal safety (Officer Moody and his son have been threatened in

20  connection with decedent's death), the candid disclosure of information from third parties, and

21  the candid disclosure of information in employment applications.  Should this type of

22  information be subject to disclosure, Estarziau is concerned that qualified candidates will be

23  dissuaded from applying to be officers because of the fear of loss of privacy.

24        While the court is cognizant of Officer Moody's privacy interest and his interest

25  in his and his family's safety, the court must weigh these interests against the plaintiffs' interest

26  in this action.  The training, hiring, and disciplinary records for Officer Moody are reasonably

1   calculated to lead to the discovery of admissible evidence regarding plaintiffs' allegations.

2   Furthermore, other than a conclusory statement, the City provides no support for its argument

3   that potential candidates will not apply to be officers for fear of loss of privacy.

4           Accordingly, the City is ordered to produce redacted copies of the job application

5   that initiated Officer Moody's current employment as a law enforcement officer with City and

6   other documents containing his job history related to his application for employment with the

7   City's Police Department.  These documents are to be produced pursuant to the protective order

8   in this case.  The City is ordered to redact Officer Moody's address and other contact

9   information, social security number, drivers license number, date of birth and any other personal

10  identifiers (except for his name) in addition to any salary or tax information, as well as any

11  information about Officer Moody's family members, if it appears on the application.

12          b.      RFP No. 3

13          In RPF No. 3, plaintiffs ask the City for "[a]ny and all psychological tests of

14  Defendant Officer MOODY."  The City responded to this request as follows: I

15          Responding party objects that this category seeks irrelevant
            material and invades Officer Moody's privacy,
16          psychotherapist-patient and the official information privileges.
            The only responsive document involves pre-employment
17          investigation and therefore pre-dates the incident by more than a
            decade. The record has been maintained as private information,
18          under State law, by the employing agency since the date of hire.
            These documents will not be produced.
19

20                  i.      Relevance

21          Plaintiffs seek these tests because they perceive significant discrepancies between

22  Officer Moody's reported perception of events and the events as recorded in video footage of the

23  shooting incident.  Such discrepancies could have  psychological causes.  Further, plaintiffs

24  assert that any psychological deficits are relevant to their Monell claim.

25          Defendant objects to this request as irrelevant because these tests pre-date Officer

26  Moody's employment, and they precede more than a decade of service without criticism on his

10

1  use of force.  This court concludes that the request for these records is reasonably calculated to

2  lead to the discovery of admissible evidence under the liberal standards of federal discovery.

3  Therefore, the court overrules the City's objection based on relevance.

4                              ii.      Patient-Psychotherapist Privilege

5            Defendant also asserts a patient-psychotherapist privilege.  In Jaffee v. Redmond,

6  518 U.S. 1, 15 (1996), the Supreme Court held "that confidential communications between a

7  licensed psychotherapist and her patients in the course of diagnosis or treatment are protected

8  from compelled disclosure under Rule 501 of the Federal Rules of Evidence."  The Supreme

9  Court's recognition of this privilege was based, at least in part, on a recognition that "[e]ffective

10  psychotherapy . . . depends upon an atmosphere of confidence and trust in which the patient is

11  willing to make a frank and complete disclosure of facts, emotions, memories, and fears."  Id. at

12  10.  The privilege also "serves the public interest by facilitating the provision of appropriate

13  treatment for individuals suffering the effects of a mental or emotional problem.  The mental

14  health of our citizenry, no less than its physical health, is a public good of transcendent

15  importance."  Id. at 11.

16            This privilege generally applies only when the results of these tests were not

17  disclosed to anyone.  See Phelps v. Coy, 194 F.R.D. 606 (S.D. Ohio 2000) (holding that the

18  psychiatrist/patient privilege did not protect information learned by a psychologist where she

19  evaluated the officer at the behest of his municipal employer and disclosed the information to the

20  employer); see also Barrett v. Vojtas, 182 F.R.D. 177 (W.D. Pa. 1998) (holding

21  psychotherapist-patient privilege did not apply to conversations and notes taken during

22  counseling sessions with psychiatrist and psychologist where officer was ordered by borough

23  officials to be examined by them, and both doctors subsequently submitted certain reports to

24  borough officials); Kamper v. Gray, 182 F.R.D. 597 (E.D. Mo. 1998) (psychotherapist-patient

25  privilege did not apply to communications, reports, notes, documents, and test scores resulting

26  from county police officers' counseling sessions with mental health professionals where county

1  had required officers to undergo psychological evaluations on two occasions as part of their

2  employment, and evaluation results were subsequently submitted to employer).  In this case,

3  defendant admits that any documents responsive to this request were considered in Officer

4  Moody's pre-employment application.  Accordingly, the documents do not record

5  communications that were limited to Officer Moody and the psychotherapist, and therefore

6  Jaffee is inapposite.  Officer Moody's privacy concerns will be protected by directing the City to

7  produce responsive documents pursuant to the protective order and designated as "Confidential

8  Material."

9                    iii.    Official Information Privilege

10              Finally, defendant asserts the official information privilege.  This objection is

11 overruled for the reasons set forth above in discussion of RFP No. 2.

12         c.    RFP No. 4

13             In RFP No. 4, plaintiffs ask the City for "[a]ny and all alcohol and toxicological

14 test results of Defendant Officer MOODY."  The City responded to this request as follows:

15              Responding party objects that this category seeks irrelevant
               material and invades Officer Moody's privacy as well as the
16              official information privilege. The only responsive document
               involves pre-employment investigation and therefore pre-dates the
17              incident by more than a decade. The record has been maintained as
               private information, under State law, by the employing agency
18              since the date of hire. These documents will not be produced.

19             Defendant again asserts that this information is irrelevant because it predates

20 Officer Moody's employment.  This objection is again overruled.

21             Defendant's objection based on the official information privilege is also

22 overruled.

23             The City is directed to produce responsive documents pursuant to the protective

24 order and designated as "Confidential Material."

25         d.    RFP No. 5

26             In RFP No. 5, plaintiffs ask the City for "[a]ny and all documents containing

                                        12

background history relating to Defendant Officer MOODY." The City responded to this request as follows:

> Responding party objects that this category seeks irrelevant information, violates Officer Moody's privacy and the official information privilege. Officer Moody was hired in February, 2001, more than a decade before the subject incident, and worked continuously for the Manteca Police Department since that time. The request seeks records containing personal information concerning Officer Moody's education, employment history, medical information, financial information, and these documents have been retained by the employing agency as private material, as required by State law, during the period of Officer Moody's employment. These documents will not be produced.

For the same reason that the City's objections on relevancy and the official information privilege were overruled as to Officer Moody's employment application records, they are similarly overruled here.

As for the City's privacy objection, counsel for defendants represented at the hearing on plaintiffs' motions that documents responsive to this request that are not covered by other, more specific requests, consist exclusively of medical records. While the court is inclined to find that medical information is reasonably likely to lead to admissible evidence for the same reasons as psychological information, the City will be directed to submit these documents to chambers for an *in camera* review.

e.      RFP No. 6

In RFP No. 6, plaintiffs ask the City for "[a]ny and all documents, reports, or memorandum, relating to prior allegations against Defendant Officer MOODY of dishonesty, perjury, fabrication, and/or falsifying evidence, police reports, and/or court affidavits." The City responded to this request as follows:

> Responding party objects that this request is overbroad, and seeks irrelevant information in that it is unlimited as to time, location, and subject matter. Subject to those objections, responding party responds that no such documents exist. Further, it seeks to invade Officer Moody's privacy, and the official information, deliberation process, and self-critical analysis privileges.

1    On review of Officer Moody's personnel file, Jodie Estarziau asserts that "there

2    are no records of discipline or complaints concerning the use of force, provision of medical care,

3    or allegations of untruthfulness."[2]  Nisenbaum Decl., Ex. G.

4    While evidence in the personnel files as to prior incidents of dishonesty or force

5    could be relevant to show that the City improperly trained or supervised defendant officers

6    despite knowledge of the officers' history of misconduct, defendant asserts that there are no

7    responsive documents in Officer Moody's personnel file.  At the hearing on plaintiffs' motion,

8    however, counsel for defendants admitted that they have had past success in locating documents

9    responsive to other discovery requests propounded by plaintiffs after "double-checking" their

10   files.  Accordingly, the City is directed to double-check its files with respect to this request and

11   to either produce any newly-found responsive documents or submit an amended verification that

12   documents responsive to this request do not exist.

13        f.     <u>RFP No. 18</u>

14   In RFP No. 18, plaintiffs ask the City for "[a]ny and all notes, recordings, or any

15   other written or recorded matter pertaining to the subject incident and/or evaluation of the

16   subject incident by Defendant BRICKER."  The City responded to this request as follows:

17       Responding party objects that this category is overbroad and vague
     in use of the term "pertaining to," and seeks to invade the official
18   information, deliberative process and self-critical analysis
     privileges. Subject to those objections, responding party responds
19   that no such document exist.

20         i.    <u>Vague and Overbroad</u>

21   Defendants' first argument that the request is overbroad is overruled.  The court

22   finds the request to be specifically tailored to documents "pertaining to" or "evaluati[ve]" of the

23   shooting of decedent.  Insofar as the City argues that "pertaining to" is vague, a party who

24

25       [2]  In light of its assertion that no responsive documents exist as to this request, the court
     declines to consider defendant's remaining objections on grounds of privacy, the official
26   information privilege, the deliberation process privilege, and the self-critical analysis privileges.

14

1  responds to discovery requests should rely on ordinary definitions of terms and phrases.  Thomas

2  v. Hickman, 2007 WL 4302974 (E.D. Cal. 2007).

3                        iii.     Lack of Responsive Documents

4            As for the City's argument that no responsive documents exist, plaintiffs express

5  disbelief and cite to the following in an effort to undermine the City's assertion that Bricker

6  made no notes, recording or other written or recorded matter pertaining to or evaluative of the

7  shooting: Bricker transported Moody from the scene of the shooting to the police station, he saw

8  video footage of the incident, he talked to Moody about the shooting, and he told local press that

9  he and the police department supported the shooting.

10            Defendant counters that there are no documents responsive to this request and,

11  therefore, there is nothing to produce.

12            The City is again directed to double-check its files and to either produce any

13  newly-found responsive documents or submit an amended verification that documents

14  responsive to this request do not exist.

15            g.     RFP No. 26

16            In RFP No. 26, plaintiffs ask the City for "[p]hotographs of each and every tattoo,

17  including, but not limited to, the location and description of any such tattoos, located on the body

18  of Defendant JOHN MOODY."  The City responded to this request as follows:

19            Responding party objects that this category is vague and
            ambiguous, seeks irrelevant information and seeks to invade the
20            privacy of defendant Moody.  Subject to those objections,
            responding party responds that no such documents exist.
21

22            The City asserts that, other than the single picture already produced, it has no

23  photos of Officer Moody's tattoos, and it shouldn't be required to *take* any new photos.

24            Plaintiffs argue that defendants should produce pictures, whether taken before or

25  after the incident (or even *now*) in lieu of a physical inspection of Officer Moody.  Plaintiffs

26  have cited no case law in support of their position that, in the absence of pre-existing photos of

                                              15

1   an officer's tattoos, a police department is required to *create* responsive documents.  As to

2   plaintiffs assertion that the "only reasonable way" for plaintiffs to obtain this evidence, which

3   would go to motive, absence of mistake, opportunity or plan under Federal Rule of Evidence

4   404(b)), is for the City to take photos and produce them to plaintiffs, the court finds a more

5   appropriate (and reasonable) way to obtain the photos is to move under Federal Rule of Civil

6   Procedure 35 for a physical examination of Officer Moody.  Other tools of discovery provide

7   means for plaintiffs to seek information regarding the location and description of any tattoos.

8            Defendant's objection is sustained.

9            h.    RFP No. 30

10           In RFP No. 30, plaintiffs ask the City for "[a]ny and all records documenting any

11  action taken by Defendant BRICKER pertaining to investigation of and/or evaluation of the

12  subject-incident shooting."  The City responded to this request as follows:

13           Responding party objects that this category seeks to invade the
             official information, deliberative process and self-critical analysis
14           privileges.  Subject to those objections, responding party responds
             that no such documents exist.
15

16           The City is again directed to double-check its files and to either produce any

17  newly-found responsive documents or submit an amended verification that documents

18  responsive to this request do not exist.

19           i.    RFP No. 38

20           Finally, in RFP No. 38, plaintiffs ask the City for "[a]ny and all investigations,

21  summaries, conclusions, and/or findings of the MANTECA POLICE DEPARTMENT pertaining

22  to the subject-incident involving the death of Decedent."  The City responded to this request as

23  follows:

24           Responding party objects that this request is burdensome,
             overbroad, and vague and ambiguous as it appears to duplicate
25           previous categories seeking factual information, such as witness
             statements, testing and the like, relating to the underlying incident.
26           To the extent that the request is seeking opinions and conclusions,

1    it invades the official information, deliberative process and
     self-critical analysis privileges. Subject to those objections,
2    responding party responds that it will produce the responsive
     investigative material, and that no other responsive documents
3    exist.

4                    i.    Self-critical Analysis Privilege

5              Defendant's claim of a "self-critical analysis" privilege must be rejected.  As

6    noted earlier, where, as here, a federal question case asserts pendant state law claims, the federal

7    law of privilege applies to the entire case.  See Granberry v. Jet Blue Airways, 228 F.R.D. 647,

8    650 (N.D. Cal. 2005) (citations omitted).  The Ninth Circuit does not recognize the "self-critical

9    analysis" privilege.  See, e.g., Union Pac. R.R. v.. Mower, 219 F.3d 1069, 1076 n.7 (9th Cir.

10   2000) ("UP's assertion of a self-critical analysis privilege is particularly questionable.  This

11   court has not recognized this novel privilege.") (citing Dowling v. American Haw. Cruises, Inc.,

12   971 F.2d 423, 425-26 (9th Cir. 1992); Lewis v. Wells Fargo & Co., 266 F.R.D. 433, 437 (N.D.

13   Cal. 2010) ("Defendant's reliance on the self-critical analysis privilege is improper because that

14   privilege has not been recognized by the Ninth Circuit.").

15                   ii.    Deliberative Process Privilege

16             Defendant's assertion of the deliberative process privilege will also be overruled.

17   The deliberative process privilege "permits the government to withhold documents that reflect

18   advisory opinions, recommendations and deliberations comprising a part of a process by which

19   government decisions and policies are formulated."  Federal Trade Comm'n v. Warner

20   Commc'ns, Inc., 742 F.2d 1156, 1161 (9th Cir. 1984); see NLRB v. Sears, Roebuck & Co., 421

21   U.S. 132, 150 (1975).  The ultimate purpose of the privilege is to protect the quality of agency

22   decisions by promoting frank and independent discussion among those responsible for

23   governmental decision-making.  Warner Commc'ns, 742 F.2d at 1161; see Sears, Roebuck &

24   Co., 421 U.S. at 151.  Even if the deliberative process privilege applies, its protections are

25   qualified.  Warner Commc'ns, 742 F.2d at 1161.  A litigant may obtain discovery of materials

26   protected by the privilege if the need for the materials outweighs the governmental interest in

                                                  17

1   keeping the decision-making process confidential.  Id.  In deciding whether to override the

2   privilege claim and allow discovery, there are four factors to be considered: "(1) the relevance of

3   the evidence; (2) the availability of other evidence; (3) the government's role in the litigation;

4   and (4) the extent to which disclosure would hinder frank and independent discussion regarding

5   contemplated policies and decisions."  Id.

6            Defendant cites to no controlling authority applying the deliberative process

7   privilege to the types of documents sought by way of this RFP in the context of a civil rights

8   case.  Other courts in the Ninth Circuit have similarly rejected a defendant's use of the

9   deliberative process privilege in relation to internal affairs investigations and records of

10  witness/police officer statements, as these communications are not designed to contribute to the

11  formulation of important public policy and are routinely generated.  See Soto, 162 F.R.D. at 612-

12  13 ("The 'deliberative process' privilege, closely related to the self-critical analysis privilege, is

13  also inappropriate for use in civil rights cases against police departments."); Pittman v. County

14  of San Diego, 2010 WL 3733867, at *3 (S.D. Cal. Sept. 17, 2010).

15           Even if this court did find that a deliberative process privilege exists in this case,

16  application of the relevant factors shows that discovery is appropriate.  The internal investigation

17  of the shooting is clearly relevant because it concern the specific incident listed in plaintiffs'

18  complaint, the information was generated by the Manteca Police Department, the information is

19  not otherwise available to plaintiffs, and this type of investigation document is routinely

20  generated by defendant.  Thus, this court also rejects defendant's use of the deliberative process

21  privilege.

22                    iii.    Official Information Privilege

23           Finally, defendant invokes the official information privilege.  In the declaration

24  accompanying the City's objection, Jodie Estarziau does not discuss investigative material

25  reviewing the incident at issue here.  Rather, she declares that she has personally reviewed the

26  Internal Department review of *another* officer-involved shooting concerning Officer Moody,

18

which occurred on May 20, 2010.  Nisenbaum Decl., Ex. G.  She then states that the Department treats the internal review and investigation as a confidential matter, and maintains all such records in confidence as required by State law.  She asserts that disclosure of the analysis and conclusions could discourage self-critical analysis and frustrate the need to evaluate action on a policy level and determine whether corrective measures are needed, either by discipline, retraining, policy modification or creation.

    The purpose of the affidavit in support of an assertion of the official information privilege "is to provide the court with the information it needs to make a reasoned assessment of the weight of the interests that line up, *in the particular situation before the court*, against the requested disclosure."  Kelly, 114 F.R.D. at 670 (emphasis added).  Defendant failed to do that here by not referencing the internal review of the incident at issue, but instead the review of a 2010 shooting incident.  Furthermore, the general assertions of potential harm in the affidavit fail.  In Soto, the court found that, where the defendants asserted only "the general proposition that internal affairs investigatory documents and statements of police officers and/or witnesses should remain secret in order to encourage 'frank discussions,' " that assertion was "insufficient to meet the threshold test for invoking the official information privilege"  162 F.R.D. at 614. "'[A] general claim of harm to the "public interest" is insufficient to overcome the burden placed on the party seeking to shield material from disclosure.' [Citation.]"  Id. (quoting Kelly, 114 F.R.D. at 672).  As this court has previously held, a declaration in support of the Privilege must "provide specific information about how disclosure of the specific documents requested [ . . . ] would threaten the *specific* governmental and privacy interests at stake."  Bernat v. City of California City, 2010 WL 4008361, at *3 (E.D. Cal. 2010) (italics in original).  The court finds the declaration in this case lacks the requisite specificity and fails to allege any more than the general allegation of "harm to candid communications" that was found insufficient in Soto.

        iv.    Lack of Responsive Documents

    As to the City's assertion that no responsive documents exist, plaintiffs state that

the only documents they received in response to this request were factual information such as interviews, crime-scene examination, photographs, and video-footage of the shooting. Plaintiffs find it incredible that, in the 16 months since the shooting incident, there has been no analysis or review of the incident by the City. The court agrees that this is a surprising position for the City to take, especially after submitting the affidavit of Estarziau, who discusses an internal investigation of *another* shooting incident.

The City's privilege objections are overruled, and it is directed to double-check its files and to either produce any newly-found responsive documents or submit an amended verification that documents responsive to this request do not exist.

B.   Plaintiffs' Motion for Sanctions

Both sides have requested sanctions. Plaintiffs seek sanctions for defendant's failure to produce documents that courts have repeatedly found discoverable. Defendant seeks sanctions for plaintiffs' allegedly obvious desire to file a motion to compel before any responses were even served. There is nothing in the record justifying sanctions. Both requests are denied.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiffs' November 5, 2012 motion to compel is granted in part. Defendants shall provide supplemental responses to plaintiffs' requests for production of documents consistent with this order within fourteen days from the date of this order;

2. Defendant shall submit to the court any and all documents responsive to RFP No. 5 within seven days of the date of this order for an *in camera* review;

3. Plaintiffs' November 5, 2012 motion for sanctions is denied.

DATED: February 22, 2013.

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

/mb;duen1820.disc